**FRED HARVEY et al. v. CORPORATION COMMISSION.**

No. 12963—Opinion Filed Sept. 16, 1924.

(Syllabus.)

1. **Corporation Commission—Public Utility Jurisdiction—Dining Rooms and Lunch Counters.**

The independent operation of dining rooms and lunch counters by a company does not of itself alone make it a transportation or transmission company or a public utility within the provisions of the Constitution or the statutes, and therefore its regulation is not by law consigned to the Corporation Commission.

2. **Carriers — Public Service — Supplying Food for Passengers—Enforcement of Duty.**

The maintenance on its lines of "reasonable and just" public service facilities and conveniences, "operated without unjust discrimination, under reasonable rules, and supplying food to passengers traveling on its lines," is a duty owing by each railway company, and as to it such duty may be enforced for the benefit of intrastate passengers only by the Corporation Commission. and for interstate passengers by the Interstate Commerce Commission.

3. **Corporation Commission—Regulation of Public Utility to be Addressed to Principals.**

The Corporation Commission has authority to deal with the servants of a public utility only in so far as it may be necessary to carry into effect a lawful order against the master and principal, and against such principal all regulatory proceedings must be addressed and all effective orders entered.

4. **Same—Scope of Regulation—Not to Usurp Management of Utility.**

It must be remembered that while much power is by law given to the Corporation Commission in the regulation of public utilities, yet the utility is not the property of the commission or the state, but belongs to the company and its stockholders, and the officers and directors by them selected must, under proper regulation, be permitted to manage the property in such proper way as to earn and pay, if they lawfully can, just dividends to the stockholders. Regulation must not be so far extended as to constitute management or operation.

5. **Same.**

A public utility has the right to prescribe and enforce reasonable rules and regulations for the government and use of its property, and no such rule should be abrogated by the Corporation Commission unless it is contrary to the law of the state, or is clearly proven to be unjustly and injuriously discriminatory, or is so arbitrary and unreasonable as to be decidedly unjust to its patrons. The mere fact that such rule is not the best possible rule is not alone sufficient to bring it within the prohibited class.

6. **Same.**

A rule that is made applicable equally to all and with which all can comply with equal ease is not discriminatory.

**7. Same—Right of Proprietor of Public Dining Room to Require Men to Wear Coats.**

Fred Harvey, a corporation, has the right, under conditions presented by the record in this case, to enforce a rule requiring all men to wear coats while eating in its dining rooms.

Appeal from order of the Corporation Commission by Fred Harvey and the Atchison, T. & S. F. Railway Company. Reversed and dismissed.

Cottingham, Hayes, Green & McInnis, for appellants.

E. S. Ratliff for Corporation Commission.

LYDICK, J. This action was begun before the Corporation Commission upon the written complaint of its chairman against the Atchison, Topeka & Santa Fe Railway Company, a transportation company, and Fred Harvey, a corporation, which serves meals for hire at various stations of said railway company and at other stations of the St. Louis-San Francisco Railway Company, but the last named company was not made a party to the action

The effect of the complaint is to charge that the Fred Harvey Company refuses to admit a gentleman patron to its dining room, where meals table d'hote are served, unless he wears a coat, thus requiring him, if he would dine coatless, to eat at Fred Harvey's lunch counter, where only a la carte service is had, and food is relatively higher in price than in the dining room. The complaint charges that, therefore, such coatless patrons must pay more for their meals in some instances than is paid by others, and that the rule makes an unjust discrimination between such passengers and other patrons to the financial loss of those who refuse to wear coats.

Upon a hearing had, the Corporation Commission, after reciting the facts, made its order in haec verba as follows, to wit:

"That the defendant, Fred Harvey, cease and discontinue, in Oklahoma, the discrimination above found to exist."

No order was made against either of the railway companies named. Both Fred Harvey and the Atchison, Topeka & Santa Fe Railway Company appeal to this court from the Corporation Commission's order.

The independent operation of dining rooms and lunch counters by a company does not of itself alone make it a transportation or transmission company or a public utility within the provisions of the Constitution or the statutes, and therefore its regulation is not by law consigned to the Corporation Commission. The maintenance on its lines of "reasonable and just public service facilities and conveniences," operated without unjust discrimination, under reasonable rules, and supplying food to passengers traveling on its lines, is a duty owing by each railway company, and as to it such duty may be enforced for the benefit of intrastate passengers only by the Corporation Commission, and for interstate passengers by the Interstate Commerce Commission.

Counsel for the Corporation Commission does not in his brief assert that the business done by Fred Harvey, a corporation, brings it within the jurisdiction of the Corporation Commission, but does assert that Fred Harvey, in conducting its business, is doing that required to be done by the railway companies, and that in so doing Fred Harvey is acting in the capacity of servant and agent of the railway companies. He asserts that the Corporation Commission has jurisdiction over the railway companies to require them to cause such service to be rendered without unjust discrimination and under reasonable rules and regulations. Upon this theory, the Corporation Commission has proceeded in this case against the Atchison, Topeka & Santa Fe Railway Company as principal and has joined Fred Harvey, a corporation, only in its capacity as servant and agent of the railway companies. In their briefs and arguments here presented, both Fred Harvey and the Atchison, Topeka & Santa Fe Railway Company have acquiesced in the doctrine and theory of the Corporation Commission that Fred Harvey is the mere agent and servant of the railway companies. For that reason alone we will determine the issues here upon such theory, although from the meager, indefinite, and incomplete record upon this point we have much doubt as to its correctness.

The order is made against Fred Harvey alone, and upon its face is apparently directed against it as a principal and not as an agent and servant. No order is made against the Atchison, Topeka & Santa Fe Railway Company, the principal, or against the St. Louis-San Francisco Railway Company, which was not even made a party to the action, although the order to abrogate the coat rule covers the business of Fred Harvey on both lines of railways. If Fred Harvey, a corporation, is the mere servant and agent of the railway company, then in this case, in so far as depends the jurisdiction of the Corporation Commission, its acts are those of its master and not of its own, and to its master's orders must it

yield obedience, and for its acts its master and principal, the railway company, must answer to the tribunal having jurisdiction to command it.

The Corporation Commission has authority to deal with the servants of a public utility only in so far as it may be necessary to carry into effect a lawful order against its master or principal, and against such principal all regulatory proceedings must be addressed and all effective orders entered. In his brief, counsel for the Corporation Commission complains that such analysis is technical, but we say that the requirements that a judgment and order be rendered and entered against the proper party is about the most substantial element of every proceeding. As to the dining service on the lines of the St. Louis-San Francisco Railway Company, the principal was not even brought into the case, and it may be, for aught we know from the record, that it has no knowledge of the radical change ordered in the conduct of this business upon its premises. Can a rate case be maintained solely against a ticket agent? The Corporation Commission was without jurisdiction to make and enforce this order against Fred Harvey, a corporation.

Should we reverse and remand the case authorizing the commission to enter such order against the Atchison, Topeka & Santa Fe Railway Company as to Fred Harvey's business on its lines? The order includes service to the interstate passengers, whom the record shows to be the greater portion of patrons affected, and also includes service to the patronizing general public who, while dining with Fred Harvey, are not passengers of the railway company or connected with its commerce. Jurisdiction to regulate the dining service as to interstate passengers is by acts of Congress, authorized by the federal Constitution, vested solely in the Interstate Commerce Commission, and it is actively occupying the field to such extent that the state, even through its police powers, is not authorized to interfere. The rule is not for the enforcement of a common-law duty. It places a restriction and burden upon the company's conduct of interstate commerce, and as such the order is void for lack of jurisdiction in the Corporation Commission. See Missouri, K & T. Ry. Co. v. Walston, 37 Okla. 517, 133 Pac. 42; Western Union Tel. Co. v. Bank of Spencer, 53 Okla. 398, 156 Pac. 1175; St. L. & S. F. Ry. Co. v. Wood, 52 Okla. 176, 152 Pac. 848.

In so far as the order may affect patrons not connected with either interstate or intrastate commerce, neither the Interstate Commerce Commission nor the Corporation Commission has jurisdiction to make it, unless it be made to affirmatively appear necessary for the benefit of such commerce. It does not appear that the Corporation Commission would have made the order had it known same could have been made effective only as to intrastate passengers, and, therefore, for reasons stated, we hold the order void in toto.

Shall we reverse and remand the case, giving the Corporation Commission authority to modify the order and make it effective against the Atchison, Topeka & Santa Fe Railway Company as to intrastate passengers? If the rule creates an unjust discrimination between patrons, we should do so. The record shows that Fred Harvey furnishes coats to all his patrons who have none and who desire to eat in the dining room. The rule requiring the wearing of coats is applied equally to all and all are equally capable of complying therewith, and it is, therefore, not discriminatory. The obstinate patron who, by refusing to wear a coat, pays at the lunch counter a higher price for a meal than he would pay in the dining room, must charge his loss to his own stubbornness and bear his self-inflicted injury without complaint of discrimination.

The Corporation Commission says the rule produces much discomfort in the hot weather, and, therefore, is unreasonable. If the rule be arbitrary, unjust, and unreasonable, it should not be sustained. Is it so? Let us look to the reason for the rule. The Harvey eating houses were first established 48 years ago by Fred Harvey. His son, Ford Harvey, now the chief executive of the company, testifying as a skilled and experienced expert upon the theory of the rule, and with knowledge of all the facts, furnishes us in the record much evidence and many theories of practical value, none of which are disputed or by other evidence overcome. From the entire record before us, we are confirmed in the following beliefs:

A very substantial purpose of the officers of the railway company and Fred Harvey for the maintenance of extensive dining service at the railway stations, rather than exclusively in dining cars, is to please those traveling on the railways and thereby to popularize and promote passenger traffic. To accomplish this result every effort is made to so serve the patrons of this dining service as to make it most pleasing and satisfactory to its patrons generally. At the same time the business of Fred Harvey and the railway company in this matter is one admittedly

operated for direct profit to Fred Harvey.

Society in America has for years assumed jurisdiction to a great extent to dictate certain regulations of dress in first-class dining rooms, and these conventions of society cannot be entirely ignored, without disastrous results to those who serve a metropolitan public in such capacity. Civilized society has developed the masculine attire from the breech-clout to the coat and trousers. Always a part of the masculine garb, and often a major portion of feminine dress, is worn as an adornment to satisfy the conventions of society rather than for bodily comfort and protection. Unlike the lower animals, we all demand the maintenance of some style and fashion in the dinning-room, but where to draw the line between the breech-clout and the full-dress suit, tailored in Paris or New York, presents a question often affording great difference of opinion, and that is the trouble here.

Just laws are not originally created by the Legislature. They are first made by the people (and the people are society) and are merely discovered and announced by those whom we call lawmakers. Miss Edith Johnson, long a student and writer of note on subjects akin to the one under consideration, testified in this case and said:

"The enforcement of certain social conventions has a tendency to maintain and elevate the tone of society * * * in its general sense."

She says the rule is "to maintain the morale and aesthetic tone of the Harvey eating service," and is a reasonable one. Mrs. J. H. Miley, also well experienced as a student and writer, on the witness stand approved the rule, saying that in such places as the first-class dining room, "the custom of the people requires men to go well groomed, because it makes them respect themselves more and it makes others with them respect them more."

To abrogate this rule and require the dining room manager to draw the line of dress at mere cleanliness would lead quickly to personal disputes over differences of opinion. To permit the coatless to enter would bring in those with sleeveless shirts, and even the shirtless garb that we frequently see where no formality is required. Man's coat is usually the cleanest of his garments, and the fact that he is required to wear a coat serves notice that decorum is expected and creates a wholesome psychological effect.

Fred Harvey equips these dining rooms with most luxurious furnishings, pleasing to the trained and appreciative eye, satisfying to the aesthetic taste, and places the patrons amidst surroundings best calculated to stimulate the appetite. Food seldom elsewhere excelled is served by well-garbed and efficient attendants. Certainly it is not amiss to require the gentlemen who there would dine to wear a coat for 20 minutes, as he sits in front of the cooling electric fans always there afforded. Our nation's Chief Executive has recently well said that "a true citizen of a real republic cannot exist as a segregated, unattached fragment of selfishness, but must live as a constituent part of the whole society, in which he can secure his own welfare only as he secures the welfare of his fellow men." Complaints against such rule, by those unwilling to momentarily endure a slight discomfort, out of regard for the feelings, tastes, and desires of others, are few compared with the storm of protests the abrogation of the rule would ultimately produce. The order requires the abrogation of the rule even in pleasant weather, and we are quite sure that the order itself is more unreasonable and arbitrary than the rule is even charged to be. The expert witnesses agree that the rule is almost universally adopted at railway dining rooms, in dining cars, and first-class hotels, in deference to the conventions of human society generally.

It must be remembered that while much power is by law given to the Corporation Commission in the regulation of public utilities, yet the utility is not the property of the commission or the state, but belongs to the company and its stockholders, and the officers and directors by them selected must, under proper regulation, be permitted to manage the property in such proper way as to earn and pay, if they lawfuly can, just dividends to the stockholders. **Regulation must not be so far extended as to constitute management or operation.**

Confirming this theory and discussing what is a reasonable rule, the following authorities are in point: See section 504, Comp. Stats. 1921; Decker v. Atchison, T. & S. F. Ry. Co., 3 Okla. 553, 41 Pac. 610; State v. Cummings, 3C Mo. 263; Ex parte Chase, 43 Ala. 303; H. & T. C. R. Co. v. Everett (Tex.) 86 S. W. 17; Burnett v. Watier (Wis.) 116 N. W. 885; Vol. 5, Elliott on Railroads (3rd Ed.) sec. 2383.

It was not intended by the writers of our organic law that the funds of our state, raised by the taxation of our people, should be expended by the Corporation Commission in the conduct of extensive and expensive hearings upon just what rules of style

and fashion should be followed by a great public utility. **Lawmakers must not completely destroy personal liberty.** It would be unwise to leave matters like this to the discretion of inexperienced public officers, selected by a vote of the people, and whose policies and rules would likely change at every election. It is well, ordinarily at least, that we be slow to abrogate rules in such regard, made by those whose successful life's experience well qualify them to formulate such internal policies. The rule is not unreasonable.

The order of the Corporation Commission is reversed and the case is dismissed.

McNEILL, C. J., and NICHOLSON, BRANSON, JOHNSON, MASON, WARREN, and GORDON, JJ., concur.