UNITED FUEL GAS COMPANY, *et al.*

*v.*

THE PUBLIC SERVICE COMMISSION OF WEST VIRGINIA

(No. 12852)

Submitted September 16, 1969. Decided December 16, 1969.

Rehearing Denied June 9, 1970.

*C. E. Goodwin, Thomas E. Morgan, Thomas E. McHugh, Vincent V. Chaney,* for petitioners.

*John E. Lee, Augustine A. Mazzei, Jr., Cassius H. Toon,* for respondent.

HAYMOND, PRESIDENT:

In this proceeding, originally instituted May 29, 1967 by the public service commission of West Virginia hereinafter sometimes referred to as Commission or respondent, against United Fuel Gas Company, a corporation, hereinafter sometimes referred to as petitioner or United, and subsequently enlarged by the addition as parties of Manufacturers Light and Heat Company, a corporation, hereinafter sometimes referred to as petitioner or Manufacturers, Cumberland and Allegheny Gas Company, a corporation, hereinafter sometimes referred to as petitioner or Cumberland, and Columbia Gas of West Virginia, Inc., a corporation, hereinafter sometimes referred to as petitioner or Columbia of W. Va., these questions are presented for decision: (1) Whether the reduction of $1,000,000.00 in the present rates of United as ordered by the commission is correct and proper; and (2) whether the proposed realignment plan, as provided by contract between the parties, by which United and two corporate utility subsidiaries of Columbia Gas System, Inc., Manufacturers and Cumberland, would transfer to a new corporation, Columbia of W. Va., all of their distribution systems and would retain all the rest of their respective properties in West Virginia, consisting of production, storage, transmission facilities, leaseholds and other like properties, which plan the commission by its order refused to permit, should have been consented to and approved by the commission.

United is a corporate subsidiary of the Columbia Gas System which is a system of gas companies supplying natural gas service at retail and wholesale for consumption in the States of West Virginia, Virginia, Kentucky, Maryland, New York, Ohio and Pennsylvania, and in the District of Columbia, and consists of Columbia Gas System, Inc., a registered holding company, and several subsidiary companies, including United. These subsidiary companies operate in different groups, three of which are the Pittsburgh Group, operating and providing services in West Virginia, New York, Pennsylvania and Maryland, consisting of Manufacturers, Home Gas Company, Columbia Gas of New York, Columbia Gas of

Maryland, Columbia Gas of Pennsylvania and Cumberland, the Columbus Group, doing business only in Ohio, consisting of Ohio Fuel Gas Company, Ohio Valley Gas Company and Columbia Gas of Ohio, and the Charleston Group, operating and providing services in West Virginia, Kentucky, Virginia, Ohio and Maryland, consisting of United, Atlantic Seaboard Corporation, Kentucky Gas Transmission Corporation, Virginia Gas Distribution Corporation, Columbia Gas of Kentucky and Columbia Gas of West Virginia. Columbia Gulf Transmission Company operates a natural gas pipeline which transports gas from Louisiana to Kentucky. The Columbia Gas System also includes Columbia System Service Corporation which furnishes engineering, accounting and other advisory services for operating subsidiaries upon request, Inland Gas Company, which operates primarily in eastern Kentucky, Preston Oil Company, Big Marsh Oil Company and Columbia Hydrocarbon Corporation, which is a liquid products company.

The Charleston Group companies now have six distribution districts, thirty-two local offices and 283,000 retail customers. If the realignment plan is approved and ultimately concluded, one of the seven distribution districts of the Pittsburgh Group and 65,000 of its retail customers will be transferred and added to the Charleston Group which will then have seven distribution districts and 348,000 retail customers, of which number approximately 143,000 retail customers are now served by United. All these customers would be served by Columbia of W.Va., which would also serve 7,000 of the other petitioners' present customers.

By its order of May 29, 1967, the commission, on its own motion, instituted this proceeding, as above indicated, to determine whether the rates and charges of United for gas service to its West Virginia customers should be reduced to reflect certain savings in the cost of southwest gas or other items. By its order United was made a respondent in the proceeding and was required to furnish to the commission, within 60 days, a cost of service study for its West Virginia business for the calendar year 1966 and to use the classification and allocation methods employed in the last general rate

proceeding of United before the commission, which was case No. 5536, which was determined by an order of the commission entered October 17, 1962. In that proceeding the present rates and charges of United were fixed and determined based upon the year 1961 as the test period. United complied with the requirement of the commission to furnish a cost of service study but, with the approval of the commission, the test period was altered to comprise the 12 months ending October 31, 1966.

On August 2, 1967, United filed a pleading designated an answer-petition. In the answer portion of the pleading United asserted that there is no present basis for reducing its retail rates and asserted that reduction in southwest gas costs mentioned in the May 29, 1967 order of the commission was off-set by increased costs. In the petition portion of the pleading, in which the petitioners were United, Manufacturers, Cumberland and Columbia of W. Va., Columbia of W. Va. sought to acquire and United, Manufacturers and Cumberland sought to sell and transfer the assets and properties in the State of West Virginia which United, Manufacturers and Cumberland now use in connection with the retail distribution of natural gas in West Virginia and the wholesale sale and delivery of natural gas to nonaffiliate public utilities distributing natural gas at retail for ultimate consumption wholly within the State of West Virginia, and it is alleged that upon receipt of all regulatory approval, Columbia of W. Va. would reduce its rates to general service retail customers in West Virginia in the amount of $1,000,000.00 and would guarantee not to increase such reduced rates for a period of four years. The prayer of the petition was that Manufacturers, Cumberland and Columbia of W. Va. be made parties to the proceeding, that by incorporation by reference the entire record in a prior case, No. 6043, be made a part of the record in this proceeding, and that the proposed realignment plan be granted.

The commission by order entered September 11, 1967 set the proceeding for hearing on November 16, 1967 for the purpose of determining issues raised by the order of the

Commission of May 29, 1967, the matters set forth in the answer-petition and, in the event the commission considered it proper to incorporate the proposed realignment plan in this proceeding, to permit the petitioners to proceed with the presentation of their evidence in chief. Leave was granted to any interested party to file objections with the commission at any time on or before November 16, 1967 or to appear at the hearing on that day and make any objections that such party might deem proper. The order also provided that United, Manufacturers, Cumberland and Columbia of W.Va. should give proper notice of the filing of the answer and the petition and of the time and place of the hearing. All the requirements of the order of the commission were complied with by the petitioners.

The initial hearing was held November 16 and 17, 1967. No protests were filed and the only intervenors were members of the AFL-CIO in West Virginia who appeared by attorney. At the hearing the commission ruled that the portion of the pleadings relating to corporate realignment should be consolidated with the rate investigation and that Manufacturers, Cumberland and Columbia of W. Va. should be made parties to the proceeding. The petitioners withdrew their motion that the entire record in the prior case, No. 6043, should be made a part of the record in this proceeding. Additional hearings were held March 19, 20 and 21, 1968, April 3, 1968 and May 7, 1968. The members of the AFL-CIO who were represented by attorney, made no appearance after the initial hearing and did not further participate in this proceeding.

After the evidence in behalf of United and members of the staff of the commission, respectively, concerning the rate investigation and in behalf of the petitioners and the staff, respectively, with respect to the realignment plan was introduced at the various hearings, the case was submitted for decision pending receipt of briefs which were promptly filed by the petitioners and by the staff of the commission.

Evidence in behalf of United with respect to the rates and of the petitioners with respect to the realignment plan

consisted of the testimony of witnesses Cornell, Sundman, Crissman, D'Agostino, Puckett, Bennett, Deakin, Phillips and Garey, and 16 exhibits, identified as Nos. 1 through 16, and the evidence in behalf of the staff of the commission consisted of the testimony of witnesses Heath, Carden and Murphy, and 4 exhibits, identified as Nos. 1 through 4.

By its final order entered January 8, 1969, the commission expressed the opinion that the present rates and charges of United for its West Virginia intrastate customers were excessive to the extent of $1,000,000.00 and should be reduced in that amount, and that the commission should refuse its consent to and approval of the relief prayed for in the petition. Accordingly, it held that United should file with the Commission, within 30 days from the date of the order, proposed new schedules of rates and charges for gas furnished its West Virginia retail customers effecting the $1,000,000.00 reduction as ordered and should file customers bill analysis on which the schedules should be based for the consideration and approval of the commission; that the rate investigation phase of this proceeding be continued generally pending the filing of the new schedules of the rates of United and consideration and approval of such rates by the commission; and that the consent to and approval by the commission of the petition for realignment as contained in the answer-petition be withheld and refused and the petition be dismissed. To this order of the commission this Court granted this review upon the application of the petitioners on July 7, 1969.

This proceeding, having matured for hearing, was submitted for decision on September 16, 1969, upon the petition for an appeal, the original record, the statement of reasons of the commission, and the briefs and the oral arguments of the attorneys in behalf of the respective parties.

It clearly appears from the evidence and the statement of the commission that United is presently engaged in West Virginia in the production, storage, transmission and distribution of natural gas at wholesale in interstate commerce and at retail in intrastate commerce; that it is the largest distributor

of natural gas at retail in this State and serves generally in the southern portion of the State approximately 143,500 customers and the largest portion of the gas it sells is purchased from the southwest and is transported by pipelines to West Virginia; that in recent years, following decisions by the Federal Power Commission, the price of southwest gas was reduced and the prices for gas sold were held by that commission to be excessive and that the excess was refunded by United to its West Virginia customers.

It also appears from the evidence and the statement of the commission that the last general rate case in which United was involved was Case No. 5536, decided October 17, 1962, and that in that case the commission allowed United a rate return of 6 per cent; that in this proceeding the classification and allocation procedures to be employed were those authorized by the commission in Case No. 5536 in which the test period was the year 1961; that in the cost of service presented by United in its Exhibit No. 1 in this proceeding, the total cost of service for the West Virginia distribution business was $30,796,375.00; that the revenue from the rates fixed by the commission in Case No. 5536 and in effect as of June 1, 1967, with certain immaterial exceptions, was $31,242,798.00; that the excess of revenue over the cost of service based on the 6 per cent rate of return, was $446,423.00; that United has given effect to a reduction in the cost of service based upon a 5 per cent tax saving of Columbia Gulf Transmission Company which increased the excess of revenue over cost of service to $489,094.00; and that on the basis of revenue in excess of cost of service in the amount of $489,094.00, the rate of return to United on its West Virginia business is 6.59 per cent; that according to staff Exhibit No. 1 the total cost of service of United for the test period was $29,914,844.00, based on a rate of return of 6 per cent; that revenue for the same period was the admitted sum of $31,242,798.00; and that by the cost of service adjustments made by the staff the excess of revenue over cost of service is $1,327,954.00.

It further appears from the evidence and the statement of the commission that by reason of the adjustments made by

the staff in the item of consolidated tax savings percentage the cost of service of this item as determined by the staff was reduced by $110,481.00; that the method used by United with respect to this item of cost was in accord with the procedure previously approved by the commission in Case No. 5536; that the percentage of consolidated tax savings adopted and allowed by the commission in that case was 3.43 and that the percentage applied by the staff was 9.02; that in its cost of services the staff excluded an attrition allowance in the total amount of $100,925.00, which amount had been approved and allowed by the commission in Case No. 5536; that the staff disallowed an item of $18,813.00 of nonproductive and intangible productive well drilling costs which had been approved by the commission in Case No. 5536; that the staff excluded this item by the use of a five-year average instead of a four-year average for nonproductive well drilling costs and a three-year average for intangible productive well drilling costs, which United asserts constituted a more realistic method of determining such costs; that by resorting to a different method of allocation of administrative and general expenses from that used and approved by the commission in Case No. 5536 the staff reduced that item by the amount of $608,641.00; that the total reduction in the foregoing items of cost by the staff amount to $838,860.00; that the total reduction of $838,860.00 and the item of $489,094.00, excess of revenue over cost of service constitute the excess of $1,327,954.00 of revenue over cost of service and that this amount less the reduction of $1,000,000.00 ordered by the commission represents a return to United of 6.4 per cent.

With respect to the reduction of various items of cost by the staff the witness Cornell when asked this question "You earlier testified that the Staff Cost of Service for United in this proceeding is inconsistent with the Cost of Service the Commission required in this proceeding. Is that correct?" gave this answer "Yes. By its order of May 29, 1967, the Commission required United Fuel to submit its Cost of Service using the classification and allocation methods utilized by the Commission in United's last rate proceeding, which was Case No. 5536. It was our understanding, based upon conferences

with Staff representatives, that this requirement by the Commission called for a test year Cost of Service including a 6 percent rate of return. As I have mentioned, the Staff in the preparation of its Cost of Service in this proceeding did not follow the methods used by the Commission in Case No. 5536, to the extent that the Staff has reduced the amounts applicable to West Virginia business by approximately $839,000.00 without giving any consideration to the greatly increased current cost of money."

To reverse the final order of the commission with respect to the investigation of rates entered January 8, 1969, which required United to prepare and file with the commission new schedules of rates and charges for gas service furnished its West Virginia retail customers which would effect a $1,000,000.00 reduction in such rates and charges, United assigns and relies upon these errors: (1) The commission exceeded the limitations and scope of the inquiry pursuant to its order issued May 29, 1967, in which it undertook a limited investigation of the rates of United, using the classification and allocation methods employed in the last general rate proceeding of United, contrary to the guarantees of due process under the Constitutions of this State and of the United States and contrary to the limitations of its own order setting the bounds of such proceeding; (2) the commission failed to sustain its burden of proof in ordering reduction of rates previously determined in a fully litigated proceeding; and (3) the final order of the commission lacks sufficient evidence to support it and is contrary to proper evidence in the record.

The order of the commission of May 29, 1967, which contained recitals that since October 17, 1962, the date of the order of the commission in Case No. 5536, the last general rate case of United, the cost of southwest gas to United for its West Virginia business had decreased by more than $1,000,000.00 and that it appeared to the commission that an investigation should be instituted to determine whether the rates of United to its West Virginia customers should be reduced to reflect such savings in the cost of southwest gas or other items, and which initiated this proceeding for the

purpose of investigating the rates and charges of United to its West Virginia customers, also contained these provisions:

"IT IS ORDERED that an investigation of the rates and charges of United Fuel Gas Company to its West Virginia customers be instituted; that United Fuel Gas Company be made respondent to this proceeding and that it appear in the Commission's Hearing Room at the Capitol in the City of Charleston, West Virginia, at a date later to be set and show cause, if any it can, why its rates and charges for furnished gas service in West Virginia should not be reduced.

"IT IS FURTHER ORDERED that the respondent, United Fuel Gas Company, prepare and furnish to the commission within 60 days from the date of this order a cost of service study for its West Virginia business for the calendar year 1966, using the classification and allocation method employed in the last general rate proceeding."

It is clear from the quoted provisions of the order that the commission prescribed the method to be followed in preparing and furnishing the required cost of service study and that the methods so prescribed were the classification and allocation methods employed in Case No. 5536, which was the last general rate proceeding in which United was involved and in which its present rates and charges were fixed and determined. This requirement was complied with by United but was not complied with by the staff. On the contrary the staff employed an entirely different method in making its adjustments with respect to the items of cost which were excluded or reduced by the commission at the instance of the staff. The staff should not have departed, as it did, from the methods prescribed by the order and employed in Case No. 5536, which as indicated was the last general rate proceeding in which United was involved and in which the present rates under investigation in this proceeding were fixed and determined by the commission, and the commission should not have permitted such departure from the method prescribed by its order. Though the departure from the prescribed method and the use of a different method of

classification and allocation was not, as contended by United, violative of due process, it adversely affected and diminished the weight of the evidence and rendered it insufficient to support the action of the commission in ordering the reduction to the extent of $1,000,000.00 in the rates and charges of United which had been previously fixed and determined by the commission in Case No. 5536, when such evidence is considered in comparison with the undisputed evidence in behalf of United that the items of cost which have been excluded or reduced in this proceeding were found to be correct, approved as such, and fixed by the commission in Case No. 5536.

What has been said concerning the departure by the staff from the method prescribed in the order of the commission of May 29, 1967, in considering and adjusting cost of service should not be construed to limit or restrict the use of methods of procedure by the commission in a general rate case or in any proceeding in which the methods of procedure are not limited or restricted. In all such instances the commission may, of course, use and adopt any and all appropriate methods and procedures for considering and determining the cost of service of any utility within its jurisdiction.

It is pertinent to observe that this proceeding is not a general rate case or proceeding but instead is an investigation of previously fixed rates and charges for the express purpose of determining whether such rates and charges should be reduced. In this proceeding the utility is not seeking an increase in rates but is resisting the effort of the commission to bring about, as it did, a reduction in the previously fixed rates and charges of United.

A utility rate which, as here, has been established in a fully litigated rate proceeding will be presumed to be reasonable in the absence of proof to the contrary. *Community Utilities Corporation v. Metropolitan Dade County Water and Sewer Board*, 64 P.U.R. 3rd 210, *affirmed on appeal*, 200 So. 2d 831. In that case the court said "There is no presumption that the existing rates of a public utility company are unreasonable; to

the contrary, there is a presumption of reasonableness." In general, a rate fixed by an authorized rate-making body for a public utility is presumed to be valid and reasonable. 43 Am. Jur., *Public Utilities and Services,* Sections 186 and 228. A rate for the service or production of a public utility fixed or approved by public authority is prima facie reasonable. 73 C.J.S., *Public Utilities,* Section 26.

Section 4, Article 2, Chapter 24, Code, 1931, as amended, relating to increase or change in any utility rate, provides: "At any hearing involving a rate sought to be increased or involving the change of any fare, charge, classification, regulation or practice, the burden of proof to show that the increased rate or proposed increased rate, or the proposed change of fare, charge, classification, regulation or practice is just and reasonable shall be upon the public utility making application for such change." As indicated, this statute places the burden of proof upon a utility which seeks an increase of an established rate but, as United is not seeking any increase or change in its present rates, the statute has no present application. It does, however, justify the implication that as the commission is seeking to change the rates the burden of showing that existing rates are unreasonable is upon the commission. The burden of proving the reasonableness of a proposed increase in rates is on the utility, where the existing rate is one fixed by public authority; but in other instances there is no such burden on the utility unless the proposed rate is apparently unreasonable on its face. 73 C.J.S., *Public Utilities,* Section 26. One claiming that a rate established by a rate-making body is unreasonable has the burden of proving it to be unreasonable. 43 Am. Jur., *Public Utilities and Services,* Section 186; 73 C.J.S., *Public Utilities,* Section 26. According to the weight of authority the burden of proof is upon one who attacks the rates of a public utility to show that existing established rates are unreasonable. See *Reed v. Mountain States Telephone and Telegraph Company,* P.U.R. 1918D 785, Idaho Public Utilities Commission, 1918; *Metropolitan District Commission v. Department of Public Utilities,* 352 Mass. 18, 224 N.E.2d 502. In the case just cited the

opinion contains this language: "It is true that when new rates are initially subject to scrutiny by the department for their 'propriety' under G.L. c.164, § 94, the burden is on the utility to show that they are proper. * * * . But that rule is only a part of the *general* rule regarding the burden of proof, namely, that the moving party must prove its case. Thus, where a reduction or other adjustment is sought in an existing rate * * * which has been approved for general application, the party seeking the benefit of such an adjustment has the burden of proving that the existing rate should be changed. *Louisville & Nashville R. R. v. United States*, 238 U.S. 1, 11, 35 S. Ct. 696, 59 L. Ed. 1177. *Swift & Co. v. United States*, 343 U.S. 373, 382, 72 S. Ct. 716, 96 L. Ed. 1008. *Antioch Milling Co. v. Public Serv. Co. of No. Ill.*, 4 Ill. 2d 200, 209, 123 N.E.2d 302. *Carpenter v. Home Tel. Co.*, 122 Vt. 50, 55, 163 A.2d 838. Cooper, State Administrative Law, 355. See Davis, Administrative Law Treatise, § 14.14; 5 U.S.C. § 1006(c) (1958) (§ 7 [c] of the Administrative Procedure Act)."

The commission has failed to discharge the burden of proving that the existing established rates of United are unreasonable or that for that reason the rates should be reduced.

Francis H. Crissman, Senior Vice President and Chief Financial Officer and a member of the Executive Committee of Columbia Gas System, Inc., and John E. Sundman, Treasurer of Columbia Gas System Service Corporation and Assistant Treasurer of Columbia Gas System, Inc., testified in behalf of United concerning its current rate of return. Crissman testified that in his opinion the existing rates of United would be unreasonable only if it could be shown that they produced a return in excess of 8 per cent and that an appropriate rate of return would range from a minimum of 7 per cent to a maximum of 8 per cent. J. P. Cornell, Vice President of the Charleston Group companies and also a Vice President and Director of Columbia Gas of W. Va., also a witness in behalf of United, stated that for the reasons indicated by Crissman, United should earn a return in excess

of 7 per cent. The evidence of those witnesses as to the proper rate of return is not challenged or controverted. That evidence was not submitted for the purpose of obtaining an increase in the rates of United in this proceeding but for the purpose of showing that the existing rates of United are not unreasonable and should not be reduced. The evidence also shows that a federal income surtax in the amount of approximately $265,000.00 is and has been a charge against United since that tax became effective. This charge should have been but was not taken into consideration by the commission in determining the reasonableness of the existing rates of United and in making its reduction of $1,000,000.00 in the rates charged by United.

The evidence of the witnesses who testified in behalf of the staff did not challenge the correctness of the items of cost of service produced by United but instead their evidence was offered in support of the adjustments made by the staff of the amounts of such costs by the use of a method different from that prescribed in the order of May 29, 1967, and the evidence produced by witnesses in behalf of United related to the propriety of the costs presented by United. It is clear from this evidence that the existing rates of United as established in Case No. 5536 are not unreasonable and should not be reduced. The commission has not satisfied the burden of proving that the existing rates of United are unreasonable and for that reason the order of the commission requiring United to reduce its existing established rates in the amount of $1,000,000.00 is erroneous and, as to such reduction, should be reversed and set aside. Accordingly, this Court holds that in a proceeding instituted by the Public Service Commission of this State to investigate and determine the reasonableness of an existing rate of a utility which has been established in a prior case involving the utility, the burden is upon the commission to prove that such rate is unreasonable and if the commission fails to satisfy the burden of proof to show such existing rate to be unreasonable an order of the Commission requiring a reduction in such existing rate is erroneous and will be reversed by this Court.

Inasmuch as the order requiring such reduction must be reversed because the evidence fails to show that the existing established rates of United are unreasonable, it is unnecessary to consider and determine the third error assigned by United with respect to the order of the commission requiring a reduction of its existing rates.

The petition of United, Manufacturers, Cumberland and Columbia of W. Va. for the consent and approval by the commission of its corporate realignment plan is the second petition for such consent and approval. Their first petition was in Case No. 6043, commenced in June 1964, and in that proceeding the commission refused its consent and approval.

As heretofore indicated, United, Manufacturers and Cumberland are engaged in the production, transmission and distribution of natural gas in interstate commerce and intrastate commerce in West Virginia. Manufacturers operates in the area of Wheeling and Cumberland operates in the area of Elkins, and Columbia of W. Va. was formed primarily for the purpose of acquiring distribution facilities of United, Manufacturers and Cumberland. If the transfer of these distribution facilities to Columbia of W. Va. is permitted, the headquarters of this distribution company in West Virginia will be in Charleston and one of the main purposes of the realignment plan is to avoid multiplicity of regulatory agencies.

To accomplish the transfer of the gas distribution facilities of United, Manufacturers and Cumberland to Columbia of W. Va., these utilities have entered into an agreement by which Columbia of W. Va. will issue shares of its common stock and installment promissory notes in a principal amount equal to the aggregate book value of the assets and property to be acquired by it less (1) the related reserve, (2) the amount to be paid in cash for the net utility service accounts receivable, and (3) the liability and obligations assumed by Columbia of W. Va., and upon conclusion of the transaction it will have an initial capitalization ratio of approximately 55 per cent long-term debt and 45 per cent

common stock equity. The agreement stipulates that the sale and acquisition of the distribution facilities will be on the basis of the original cost less the amount of the related accrued depreciation reserve as of the closing date. The cost of service study for the three operating companies was based on the respective rates of return, allowed by the commission in the last general rate case in which each was involved and the rate allowed for United was 6 per cent, the rate allowed for Manufacturers was 6.4 per cent and the rate allowed for Cumberland was 6.4 per cent.

The computations disclosed by the evidence submitted by the petitioners show that their total combined revenues amount to $50,294,228.00, that their total combined cost of service amounts to $50,069,203.00 and that the excess of revenues over cost of service amounts to $225,025.00; and that the total combined revenues for the three divisions, Charleston, Wheeling and Elkins, of Columbia of W. Va., if the realignment plan had been in effect, would amount to $50,397,551.00; the combined cost of service would amount to $49,340,404.00, and the excess of revenues over cost of service would amount to $1,057,147.00; and that the cost of service of the three divisions of Columbia of W. Va. would be $728,799.00 less than the combined cost of service of United, Manufacturers and Cumberland. According to calculations of the staff, as shown by the evidence, the total revenues of United, Manufacturers and Cumberland amount to $50,397,551.00, the combined cost of service amounts to $48,202,886.00, and the excess of revenues over cost of service amounts to $2,194,665.00; that the total revenue and cost of service of the three divisions of Columbia of W. Va. under the realignment plan would amount to $50,397,551.00, the combined cost of service would amount to $49,085,507.00, and the excess of revenues over cost of service would amount to $1,312,044.00. All the foregoing figures are those of the agreed test period of twelve months ending October 31, 1966.

The difference in the foregoing amounts as submitted by the petitioners and by the staff is due, in large part, to two factors, one of which is the dissimilarity in the methods used

by the companies and the staff in computing the administrative and general expenses of the West Virginia business of United, Manufacturers and Cumberland. The method used by the staff was the allocation of these expenses on the basis of the plant and expense factor and the method used by the companies was on the basis of the labor factor which has been used and approved by the commission in previous cases involving the rates of United, Manufacturers and Cumberland and has been accepted in rate cases by the Federal Power Commission. The second factor was that the staff assumed that curtailment of gas supply would be experienced by Columbia of W. Va. but petitioners assert that Columbia of W. Va. would experience no curtailment because a sufficient supply of gas would be available to prevent curtailment.

About 7,000 customers of United, Manufacturers and Cumberland are served from transmission lines. There may be some question as to whether the commission or the Federal Power Commission would have jurisdiction of these customers after realignment but petitioners have agreed by stipulation introduced in evidence that they would be served by Columbia of W. Va.

Though the foregoing computation of the staff indicates that the total combined revenues of United, Manufacturers and Cumberland exceed the total cost of service in an amount of $2,194,665.00, it clearly appears from the computation of the staff that the total combined revenues of the three divisions of Columbia of W. Va. after realignment would exceed the total combined cost of service in an amount of $1,312,044.00 and from the computation of the petitioners that the total combined revenues of the three divisions of Columbia of W. Va. after realignment would exceed the total combined cost of service in an amount of $1,057,147.00 and that the cost of service of the three divisions of Columbia of W. Va. is $728,799.00 less than the combined cost of service of United, Manufacturers and Cumberland. These computations show that the excess of revenues over cost of service of $1,312,044.00 as determined by the staff and of $1,057,147.00

as determined by the petitioners, is sufficient to justify and enable the petitioners to keep the firm commitments stipulated by their principal executive officers that the rates charged by Columbia of W. Va. will be reduced by $1,000,000.00 in such manner as the commission may prescribe and that the existing rates so reduced will be maintained by the three divisions of Columbia of W. Va. and no increase in such rates will be sought by Columbia of W. Va. for a period of four years.

The accrual of the benefits of the foregoing reduction in rates of $1,000,000.00 and the moratorium of four years with respect to any increase which the petitioners are willing to be made a condition of the approval of the realignment plan are established by undisputed evidence in behalf of the petitioners. In addition, other benefits which will result from the realignment which will produce a one company operation as opposed to a multiple company operation are simplification of cost allocations, elimination of multiple corporate establishments, reduction in the number of regulatory proceedings, reduction in the number of periodic reports and improved operating and planning control, are established by undisputed evidence which also shows that these benefits can be produced without any increase in the present number of personnel except one additional auditor at the Charleston headquarters.

The benefits which, according to the petitioners, will result from the realignment are dealt with in detail in the testimony of James S. Phillips, President of United and also President of Columbia of W. Va., as shown by these excerpts from his testimony:

> "While we do not agree that the return included in Exhibit No. 9 is at all sufficient, we are convinced that further economies will be realized for Columbia of West Virginia.

> "We further believe that the rate of return of Columbia of West Virginia will improve over that shown in Exhibit No. 9; thus, upon consummation of the proposed realignment, we are willing to reduce

rate levels to effect a one million dollar annual savings to the West Virginia customers and to offer a four-year rate moratorium.

"In addition to those savings shown by the exhibit, I and my staff have given considerable thought to this matter, and we are convinced that with consolidated operations throughout the state, additional and important savings will be realized. These additional savings are wholly intangible and represent a judgment based on experience. We cannot document these additional economies, but we believe that over a reasonable period of time, with centralized management covering all of the retail distribution operations of Columbia Gas System of West Virginia, savings to justify our commitment of a rate reduction will be fully realized.

"We believe we have demonstrated real and very substantial savings to our West Virginia customers. In fact, we have backed up this showing with an offer for a rate reduction of one million dollars annually. This and our proposed rate moratorium certainly evidence our conviction that realignment is in the public interest. But aside from these economic benefits, we are confident that realignment will bring further savings to our customers which cannot now be evaluated in terms of dollars.

"A major part of the savings will come about with the creation of the single interstate Appalachian transmission company. This has been pointed out to all other state and federal commissions as they have approved the various steps of the realignment plan. None of these savings have been included in the benefits to the West Virginia retail customers which we have shown will result from the present step. We are certain, however, that the benefits we have documented are only initial benefits. These benefits will increase as Columbia of West Virginia grows, and they will increase after the interstate merger I have mentioned becomes an operating reality."

The evidence also shows that similar realignment plans, involving Columbia Gas System companies conducting retail operations in the States of New York, Pennsylvania, Maryland, Kentucky and Ohio, have been approved by proper regulatory

agencies and are in operation in those states; and there is no evidence to indicate that any of them is not satisfactorily serving its retail customers in any of those states in which the realignment plan has been approved and is in operation.

The evidence is sufficient to show that the terms and conditions of the proposed realignment plan are reasonable, that neither party to the realignment is given an undue advantage over any other party, and that the terms and conditions of the realignment do not adversely affect the public in this State. The applicable statute, Section 12, Article 2, Chapter 24, Code, 1931, as amended, relating to the consent and approval of the Public Service Commission to the transfer or disposition of the business or property of any public utility, except railroads other than street railroads, and the merger or consolidation of any public utility, except railroads other than street railroads, of its business or property with that of any other public utility, to the extent here pertinent, provides:

> "Unless the consent and approval of the public service commission of West Virginia is first obtained: * * * ; (b) no public utility subject to the provisions of this chapter, except railroads other than street railroads, may purchase, lease, or in any other manner acquire control, direct or indirect, over the franchises, licenses, permits, plants, equipment, business or other property of any other utility; (c) no public utility subject to the provisions of this chapter, except railroads other than street railroads, may assign, transfer, lease, sell, or otherwise dispose of its franchises, licenses, permits, plants, equipment, business or other property or any part thereof; * * * ; (d) no public utility subject to the provisions of this chapter, except railroads other than street railroads, may, by any means, direct or indirect, merge or consolidate its franchises, licenses, permits, plants, equipment, business or other property with that of any other public utility * * * .

> "The commission may grant its consent in advance or exempt from the requirements of this section all assignments, transfers, leases, sales or other disposition of the whole or any part of the franchises, licenses, permits, plants, equipment, business or other

property of any public utility, or any merger or consolidation thereof and every contract, purchase of stocks, arrangement or other transaction referred to in this section, upon proper showing that the terms and conditions thereof are reasonable and that neither party thereto is given an undue advantage over the other, and do not adversely affect the public in this State.

"The commission shall prescribe such rules and regulations as, in its opinion, are necessary for the reasonable enforcement and administration of this section, including the procedure to be followed, the notice to be given of any hearing hereunder, if it deems a hearing necessary, and after such hearing or in case no hearing is required, the commission shall, if the public will be convenienced thereby, enter such order as it may deem proper and as the circumstances may require, attaching thereto such conditions as it may deem proper, consent to the entering into or doing of the things herein provided, without approving the terms and conditions thereof, and thereupon it shall be lawful to do the things provided for in such order."

The proposed realignment plan is not a transaction between independent competing utilities but instead is an intercorporate transaction between subsidiaries of Columbia Gas System, Inc., a parent registered holding company and is a prerogative of management which, however, is subject to regulation by the State in the interest of the public served by a public utility. Otherwise stated, a utility, subject to regulation by the State through the instrumentality of its public service commission, has the right to manage its affairs to the fullest extent consistent with the protection of the interest of the public. The relative rights, powers and functions of a public utility and a regulatory commission are well stated in this language in 73 C.J.S., *Public Utilities*, Section 40:

"A public utility commission has broad powers in supervising and regulating the actions of utilities within its jurisdiction in the respects provided for in the statutory or constitutional provisions by which its authority is conferred. The regulatory functions of the commission are purely administrative, and it

cannot make laws or rules of substantive right; but it may make reasonable rules and regulations within the authority conferred on it. Any rule adopted by the commission should be so construed and applied as to make it conform to the powers conferred. The commission is not a board of managers; nor is it empowered to conduct or control utilities or their affairs or to substitute its judgment for that of the directors of the utility; its power extends merely to correcting abuses of the property rights of a utility, and not to controlling their use, and to determining the reasonable effect of acts already performed. The authority of a public utility commission can be exercised only when the public necessity and convenience require it.

"In accordance with these rules, except as far as is necessarily curtailed for regulatory purposes, all the incidents of ownership are retained by a utility over its property and affairs, and it has the right in the first instance to make such rules and regulations for the conduct of its business as it may deem best, and to manage its own affairs to the fullest extent consistent with the protection of the public's interest." See also 43 AM. JUR., *Public Utilities and Services,* Section 193.

In *Bell Telephone Company of Pennsylvania v. Driscoll,* 343 Pa. 109, 21 A.2d 912, the court said "It is well settled that the commission is not the financial manager of the corporation: *Chambersburg Gas Co. v. Public Service Comm.,* supra, 116 Pa. Super. at page 227, 176 A. 794; *State Public Utilities Comm. ex rel. Springfield v. Springfield Gas & Elec. Co.,* 291 Ill. 209, 234, 125 N.E. 891; *Houston v. Southwestern Bell Tel. Co.,* 259 U.S. 318, 323, 42 S. Ct. 486, 66 L. Ed. 961. 'The Public Utility Commission is not a super board of directors for the public utility companies of the State and it has no right of management of them. Its sole power is to see that in the matter of rates, service and facilities, their treatment of the public is fair'; *Northern Pennsylvania Power Co. v. Pennsylvania P. U. C.,* 333 Pa. 265, 267, 5 A.2d 133, 134."

In *State of Missouri ex rel. Southwestern Bell Telephone Company v. Public Service Commission of Missouri,* 262 U.S.

276, 43 S. Ct. 544, 67 L. Ed. 981, 31 A.L.R. 807, the opinion contains the following quotation from *State Public Utilities Commission ex rel. Springfield v. Springfield Gas and Electric Company*, 291 Ill. 209, 125 N.E. 891: "The commission is not the financial manager of the corporation, and it is not empowered to substitute its judgment for that of the directors of the corporation; nor can it ignore items charged by the utility as operating expenses unless · there is an abuse of discretion in that regard by the corporate officers."

In *Southern Bell Telephone and Telegraph Company v. Georgia Public Service Commission*, 203 Ga. 832, 49 S.E.2d 38, at page 66, the court said "The commissioners are not the managers of this company, but their function is to regulate and disapprove any dishonest or clearly inefficient conduct and practice by the utility. Public regulation must not supplant private management." Statements to the same effect appear in opinions in *United Fuel Gas Company v. Railroad Commission of Kentucky*, 278 U.S. 300, 320, 49 S. Ct. 150, 73 L. Ed. 390; *Harvey v. Corporation Commission of Oklahoma*, 102 Okla. 266, 229 P. 428, 36 A.L.R. 1445, 1450; *Northern Pennsylvania Power Company v. Pennsylvania Public Utility Commission*, 333 Pa. 265, 5 A.2d 133, 134.

The proposed realignment plan involved in this proceeding is a proper intercorporate agreement, which is a legitimate function of management, and, under the evidence in this case, which as to the benefits to the public to be derived from the realignment is not controverted, the commission should have given its consent and approval to its consummation by the petitioners.

A realignment plan between public utilities, all of which are corporate subsidiaries of a parent holding corporation, by which the distribution facilities of three of such subsidiaries are sold and transferred to and are purchased by the other subsidiary and according to which the selling subsidiaries retain their public service facilities other than their distribution facilities and which is shown by the evidence to be reasonable, and it appears that no party thereto is given an undue

advantage over any other party, and that it does not adversely affect the public in this State, should receive the consent and approval of the Public Service Commission of this State; and an order of the Commission refusing to grant such consent and approval is erroneous and will be reversed by this Court.

One of the reasons, perhaps the main one, for the refusal of the commission to grant its consent and approval to the realignment plan is the contention of the commission that, after the realignment becomes effective, it will lose its present jurisdiction over the petitioners other than the petitioner Columbia of W. Va. Though it is conceded, and properly so, by all the parties to this proceeding, that after the realignment becomes effective, Columbia of W. Va. will be subject to the jurisdiction of the commission and United, Manufacturers and Cumberland will continue to be subject to the jurisdiction of the Federal Power Commission, it does not necessarily follow that the Public Service Commission of this State will lose any jurisdiction which it rightly has over United, Manufacturers and Cumberland. See *Preston County Light and Power Company v. Renick*, 145 W.Va. 115, 113 S.E.2d 378. That jurisdictional question, however, is not involved, and is not considered and determined, in this proceeding. Whether the commission shall continue to exercise jurisdiction over United, Manufacturers and Cumberland will depend upon whether their services as public utilities consist of intrastate public service to customers within this State and that question can not, of course, be determined until it arises and is presented in a proper proceeding.

Another reason for the action of the commission in refusing its consent and approval to the realignment is that if, after the expiration of the four-year moratorium, Columbia of W. Va. would be required, because of higher costs due to inflationary and economic conditions then prevailing, or for any reason, to seek an increase in rates, such increase, due to the four-year postponement in seeking it, might be greater than a periodic increase and in consequence would severely and adversely affect and unduly burden the commercial

customers of the company in this State. Such a result is entirely speculative and nothing in the evidence in this proceeding supports any conclusion that it will happen. Any attempt at present to anticipate a situation of that nature is not a sufficient reason for withholding consent and approval of the realignment plan.

The final order of the commission is reversed and set aside and this proceeding is remanded to the commission with directions that it dismiss that portion of this proceeding relating to the investigation of the current established rates of United and, with respect to the other portion of this proceeding, that the commission grant its consent and approval to the realignment plan as set forth in the petition of United, Manufacturers, Cumberland and Columbia of W. Va.

*Reversed and remanded with directions.*