**SECRETARY OF DEFENSE**

v.

**PUBLIC UTILITIES COMMISSION.**

**No. 80–90–M.P.**

Supreme Court of Rhode Island.

Dec. 4, 1981.

C. Max Vassanelli and William G. Cole, Attys., Dept. of Justice, Alice Daniel, Asst. Atty. Gen., Paul F. Murray, U.S. Atty., Everett C. Sammartino, Asst. U.S. Atty., Washington, D.C., for petitioner.

Dennis J. Roberts, II, Atty. Gen., John R. McDermott, Sp. Asst. Atty. Gen., for respondent.

OPINION

WEISBERGER, Justice.

This case comes before us on a statutory petition for certiorari filed by the Secretary of Defense pursuant to G.L. 1956 (1977 Reenactment) § 39–5–1. Essentially this dispute is a sequel to that determined in *United States v. Public Utilities Commission*, R.I., 393 A.2d 1092 (1978).

In the earlier case the Secretary of Defense on behalf of the Department of Defense and all other executive agencies of the United States (the Secretary) sought review of an order of the Public Utilities Commission (the Commission) approving a rate increase for the Newport Electric Corporation (Newport) and a revised rate structure for its customers. This rate structure provided for varied percentages of increase among the various classes of customers without the factual predicate of a general cost-of-service study. The Secretary did not challenge the finding that Newport was entitled to additional gross revenue but did challenge the rate design on the ground that it was discriminatory.

After examining the record in the case, we held that the evidence did not support an allocation of the additional revenue among the several classes of customers at varied percentages of increase. Consequently, we remanded the case to the Commission with the following directions:

"For the reasons indicated the records previously certified to this court are ordered returned to the commission. It should reconsider the evidence and the present record supplemented by such fur-

ther evidence as may be offered pursuant to the petition of any party or by its own direction and it should make further findings and orders in harmony with this opinion. Pending those findings and orders any increases in rates needed to achieve Newport's overall authorized increase in revenue shall be prorated across-the-board among Newport's several customer classes." *Id.*, 393 A.2d at 1097.

Thereafter, the Commission held a series of hearings on a number of issues, including but not limited to the Secretary's contentions. These issues were consolidated under three separate docket numbers. The Secretary's objections to rate design were considered under docket No. 1160. A petition for a modified intraresidential rate design was filed by the Coalition for Consumer Justice (the coalition) and considered under docket No. 1311. A petition for a further rate increase filed by Newport was considered under docket No. 1410. Since the intraresidential rate design is not relevant to the Secretary's case and the Secretary has not challenged the additional revenue granted to Newport, this opinion will be limited to the Report and Order of the Commission dated February 20, 1980, insofar as it dealt with docket No. 1160. It should be noted, however, that the evidence introduced and the testimony of expert witnesses in many instances dealt with the subject matter of all three consolidated dockets.

A principal element of evidence presented by Newport consisted of a cost-of-service study performed by Gilbert Associates for the test year 1977. This study was challenged by Dr. Gene Laber, professor of business administration at the University of Vermont, who was presented by the Division of Public Utilities and Carriers (the division). The study was further attacked by Dr. Eugene P. Coyle, a public utility rate consultant presented by the coalition. The Gilbert study was also challenged by Mr. Carter S. Ward and Mr. William C. Getty, utility rate experts, both presented by the Secretary. Generally these witnesses contended that the study was without evidentiary value for the following reasons.

"1. The study is based upon load data from other utilities.

"2. The Company failed to show how the data was gathered or give any assurance that the data is reliable.

"3. The company failed to show any basis from which to conclude that the data was representative of that of the Newport Electric Company.

"4. The load data as applied in the cost of service study was inadequate and statistically unreliable.

"5. The study erroneously assumes that the residential class peak is coincidental with the system peak.

"6. The allocation of capacity (production and transmission) costs is not based upon an appropriate methodology.

"7. The allocation of distribution costs is not based upon an appropriate methodology." [citations omitted.] [1]

After consideration of these challenges and a careful analysis of the testimony of the various witnesses, the Commission rejected the Gilbert cost-of-service study as a factual basis for rate design and allocated the docket No. 1160 increase on an across-the-board basis. In the absence of an effective cost-of-service study, this allocation was in accordance with our direction in *United States v. Public Utilities Commission, supra.*

The Secretary argues, however, that this across-the-board allocation of rate increases preserves a discriminatory rate design that had been in effect prior to the 1974 revenue increases granted to Newport. Thus, in effect, the Secretary now challenges the underlying rates that had been previously approved by the Commission prior to the 1976 order from which review had been

---

**1.** *In re Newport Electric Corp. Rate Structure:* Nos. 1311, 1160, 1410, Report and Order of PUC at 35 (Feb. 20, 1978).

obtained. We pointed out in *United States v. Public Utilities Commission* the distinction between the rule to be applied when the increase in rates for the several customer classes is at varying percentages and the rule that obtains when the increase is spread proportionately across-the-board among those classes.

"In the latter circumstance, the fact that the regulatory body had previously approved the general rates upon which identical percentage increases are superimposed and that those rates had continued in effect without challenge, creates a presumption that the new rates are reasonable and nondiscriminatory. *City of Terre Haute v. Terre Haute Water Works Corp.*, 133 Ind.App. 232, 246, 180 N.E.2d 110, 117 (1962); *City of West Allis v. Public Service Commission*, 42 Wis.2d 569, 579, 167 N.W.2d 401, 406 (1969). The rate design filed by Newport in this case, not having been proportionately distributed, is not protected by that mantle of presumed nondiscrimination." R.I., 393 A.2d at 1095.

We further pointed out that in the event the Secretary had attempted to obtain a reduction or other adjustment in an existing and previously approved rate design, the burden of justifying a change in such existing rate would have been upon the Secretary rather than upon the utility. *Id.*, 393 A.2d at 1094; *see Swift & Co. v. United States*, 343 U.S. 373, 382–83, 72 S.Ct. 716, 721, 96 L.Ed. 1008, 1018–19 (1952); *Metropolitan District Commission v. Department of Public Utilities*, 352 Mass. 18, 24–25, 224 N.E.2d 502, 507 (1967); *United Fuel Gas Co. v. Public Service Commission*, 154 W.Va. 221, 232–33, 174 S.E.2d 304, 311 (1969).

In the case at bar, in the absence of an acceptable cost-of-service study presented by the parties, the Commission had no choice under our prior opinion save to allocate the revenue increases on an across-the-board basis among the several classes of customers. The Secretary contends that we should order the Commission to require Newport to provide a cost-of-service study and to correct the discriminatory aspects of

the basic rate design that was in effect prior to the 1974 revenue increases. We are of the opinion that the burden of showing discrimination in the previously approved and hitherto unchallenged rate design is upon the Secretary. We cannot accept the Secretary's argument that the rejected Gilbert Associates cost-of-service study supports his contention of basic discriminatory rate structures. The challenges raised by the Secretary and other parties at the rate hearing went to the very essence of the reliability of the Gilbert Associates study. A study rejected on the grounds cited by the Commission cannot be used for any purpose. Since the Secretary has the burden of presenting evidence on this issue of the discriminatory rate design prior to 1974, we believe that a cost-of-service study in support of this contention should be the responsibility of and at the expense of the Secretary rather than of Newport. Since the Secretary has not presented any such cost-of-service study, we need not reach the question of its effect upon the principle of retroactive rate making.

In the event that the Secretary should desire to defray the expense of a general cost-of-service study among the various classes of Newport customers, we believe that the Commission and Newport should extend full cooperation in the use of their facilities (including the installation of appropriate meters at the Secretary's expense) in order to implement and set appropriate parameters for such study. Upon the completion of such a cost-of-service study, should the Secretary choose to undertake the task, the Commission should receive the study and such other evidence as may be pertinent on the subject of rate design. Thereafter, the Commission may consider whether Newport's rates are shown to be discriminatory and, if so, whether to take appropriate corrective action.

For the reasons stated, the records certified to this court are ordered returned to the Commission with our decision endorsed thereon. In the event that the Secretary of Defense should exercise the option to un-

dertake a cost-of-service study, he should notify the Commission of such intention within ninety days of the date of the filing of this opinion. Thereupon, the Commission and Newport should proceed to cooperate with the Secretary as previously indicated. Thereafter, the Commission shall take such further action in accordance with this opinion as the consideration of the cost-of-service study and other evidence received may require. In the event the Secretary does not notify the Commission within ninety days of the filing of this opinion of his intention to sponsor a cost-of-service study at the Secretary's expense, the petition for certiorari will be dismissed and the writ heretofore issued will be quashed.

MURRAY, J., did not participate.