IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

_____

No. 13-1126

_____

**FILED**

**April 23, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WEST VIRGINIA CITIZEN ACTION GROUP,
Petitioner

v.

PUBLIC SERVICE COMMISSION OF WEST VIRGINIA,
MONONGAHELA POWER COMPANY, AND
THE POTOMAC EDISON COMPANY,
Respondents

_____

Appeal from The Public Service Commission of West Virginia
PSC Case Nos. 12-1571-E-PC and 13-1272-E-PW

AFFIRMED

_____

Submitted: March 5, 2014
Filed:  April 23, 2014

William V. DePaulo, Esq.
Charleston, West Virginia
Attorney for Petitioner West Virginia
Citizen Action Group

Richard E. Hitt, Esq.
Charleston, West Virginia
Attorney for Respondent
Public Service Commission
Of West Virginia

Carte P. Goodwin, Esq.
Susan C. Wittemeier, Esq.
Johnny M. Knisely, II, Esq.
Goodwin & Goodwin LLP
Charleston, West Virginia
And
Christopher L. Callas, Esq.
John Philip Melick, Esq.
Jackson Kelly PLLC

Charleston, West Virginia
Attorneys for Respondents
Monongahela Power Company and
The Potomac Edison Company

The Opinion of the Court was delivered PER CURIAM.

SYLLABUS BY THE COURT

1. "The detailed standard for our review of an order of the Public Service Commission contained in Syllabus Point 2 of *Monongahela Power Co. v. Public Service Commission*, 166 W. Va. 423, 276 S.E.2d 179 (1981), may be summarized as follows: (1) whether the Commission exceeded its statutory jurisdiction and powers; (2) whether there is adequate evidence to support the Commission's findings; and, (3) whether the substantive result of the Commission's order is proper." Syl. pt. 1, *Cent. W. Va. Refuse v. PSC*, 190 W. Va. 416, 438 S.E.2d 596 (1993).

2. "'[A]n order of the public service commission based upon its finding of facts will not be disturbed unless such finding is contrary to the evidence, or is without evidence to support it, or is arbitrary, or results from a misapplication of legal principles.' *United Fuel Gas Company v. The Public Service Commission*, 143 W. Va. 33[,] [99 S.E.2d 1 (1957)]." Syl. pt. 5, in part, *Boggs v. PSC*, 154 W. Va. 146, 174 S.E.2d 331 (1970).

3. "This Court will not substitute our judgment for that of the Public Service Commission on controverted evidence." Syl. pt. 2, *Chesapeake v. PSC*, 171 W. Va. 494, 300 S.E.2d 607 (1982), *modified on other grounds by Cent. W. Va. Refuse v. PSC*, 190 W. Va. 416, 438 S.E.2d 596 (1993).

4. "Moot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights or persons or of property,

are not properly cognizable by a court." Syl. pt. 1, *State ex rel. Lilly v. Carter*, 63 W. Va.

684, 60 S.E. 873 (1908).

Per Curiam:

Petitioner West Virginia Citizen Action Group appeals the October 7, 2013, order of Respondent Public Service Commission of West Virginia ("the Commission") that approved a generation resource transaction between Respondent Monongahela Power Company ("Mon Power") and its affiliate, Allegheny Energy Supply, LLC ("AE Supply"). In its order, the Commission approved Mon Power's acquisition of AE Supply's interest in the Harrison Power Station ("Harrison plant"), which is located in Harrison County, and Mon Power's recovery of a portion of its investment in that acquisition.

In this appeal, the petitioner contends that the Commission erred in approving a $257 million acquisition adjustment in the purchase price of the plant and allowing Mon Power, under certain conditions, to pass the $257 million acquisition adjustment along to its customers in the setting of rates.[1] Upon consideration of the briefs and oral argument, as well as the appendices and pertinent authorities, this Court affirms the Commission's order.

---

[1] According to the Commission, an "acquisition adjustment" is the difference between the net original cost of the electric plant which is the cost incurred by the person who first devoted the property to utility service and the amount that a purchaser pays for the plant.

1

## I. FACTS

Mon Power and the Potomac Edison Company ("Potomac"), which is also a respondent in this case, are both subsidiaries of FirstEnergy Corporation ("FirstEnergy").[2] AE Supply, which is not a party to this appeal, is also a FirstEnergy subsidiary. In 2012, Mon Power and Potomac filed a petition with the Commission to approve a generation resource transaction and related relief. The transaction consisted of (a) Mon Power's acquisition of the 79.46% ownership interest held by AE Supply in the Harrison plant, resulting in Mon Power becoming the sole owner of the Harrison plant; (b) AE Supply's acquisition of the 7.69% ownership interest held by Mon Power in the Pleasants Power Station resulting in AE Supply becoming the sole owner of the Pleasants Power Station; (c) approval of certain affiliated agreements; and (d) implementation of a temporary base rate surcharge to recover ongoing net capital and operating costs related to the transaction, effective as of the closing of the transaction and to remain in effect until new base rates are placed into effect. In the petition, Mon Power and Potomac identified a significant deficit in Mon Power's generating capacity available to supply electricity to its West Virginia customers. To address the deficit, Mon Power and Potomac proposed a transaction in which Mon Power would be allowed to pass along the

---

[2] In the Commission's statement of reasons filed in this case, the Commission explains that Mon Power and Potomac are separate corporations but that the Commission regulates these separate corporations as though they were a single entity. Mon Power owns all of the generation capacity and contractual rights to energy generation for both companies and provides energy and capacity to Potomac's West Virginia customers. For this reason, Mon Power's purchase of the Harrison plant, at issue in this case, also affects Potomac.

$589 million acquisition adjustment in Mon Power's purchase of the Harrison plant to its customers in the rates that customers pay for electricity.

After Mon Power and Potomac's filing of its petition with the Commission, the Consumer Advocate Division of West Virginia; Petitioner West Virginia Citizen Action Group; the West Virginia Energy Users Group; the Utility Workers Union of America, AFL-CIO and its Local 304; the Sierra Club; the Independent Oil and Gas Association of West Virginia, Inc.; I.B.E.W. Local 2357, AFL-CIO; the West Virginia Oil and Natural Gas Association; the West Virginia Coal Association; and the West Virginia State Building and Construction Trades Council, AFL-CIO became intervenors in the case.

The parties and certain intervenors ultimately filed a joint stipulation which modified important aspects of the transaction as originally proposed by Mon Power and Potomac.[3] The petitioner was the only party to oppose the joint stipulation. Significant to this case, the joint stipulation reduced the amount of the acquisition adjustment that Mon Power would be able to recoup from its customers from $589 million to $257 million. Further, Mon Power and Potomac agreed to a package of incentives designed to increase employment, lend economic development support to industry, assist low-income customers, promote energy efficiency in schools, support renewable energy, support

---

[3] A joint stipulation essentially is a resolution of a case agreed to by the parties and recommended to the Commission which the Commission may accept, reject, or modify.

lower rates, and expand funding for energy efficiency programs. In sum, the joint stipulation purports to be in the public interest by resolving the capacity shortage of Mon Power and Potomac, increasing the capitalization of Mon Power and Potomac, and increasing the state's tax base.

The Commission approved the transaction proposed by Mon Power and Potomac, as modified in the joint stipulation, after it added the following conditions on Mon Power, Potomac, AE Supply, and FirstEnergy[4]:

> (1) First Energy and Mon Power must agree through written verified statements filed in the record in this case within ten days of the date of this Order that they understand and agree that if First Energy does not make additional equity investment in Mon Power to cover the decline in equity caused by the write-off of the $332 million (pre-tax) Acquisition Adjustment, Mon Power must agree not to pay, and First Energy must agree that it will not receive, any dividends from Mon Power until the equity to total capital ratio of Mon Power returns to forty-five percent.
>
> (2) FirstEnergy, AE Supply, Mon Power and Potomac Edison must agree through written verified statements filed in the record in this case within ten days of the date of this Order that they understand and agree to allow the initial $257 million Acquisition Adjustment to be subject to adjustment through a refund from First Energy or AE Supply if the [Federal Energy Regulatory Commission] determines that purchase price paid by Mon Power exceeds the fair market valuation of Harrison. If the FERC makes such a determination, the portion of the $257 million Acquisition Adjustment that exceeds fair market value will be returned to Mon Power by either First Energy or AE Supply, and the

---

[4] Two members of the Commission supported the order on appeal in this case, while one commissioner dissented.

4

refund will be credited to the Acquisition Adjustment account.

(3) FirstEnergy, Mon Power, and Potomac Edison must agree through written verified statements filed in the record in this case within ten days of the date of this Order that they understand and agree that the return on, and return of, the $257 million Acquisition Adjustment will be allowed in base rates only to the extent that fifty percent of the net margins from off-system transactions from the additional Harrison capacity acquired by Mon Power will support that return. The full return requirement will be allowed each year subject to prospective adjustment based on a review of the achieved net margins from off-system sales in relation to the amount of return requirement built into the initial surcharge, and thereafter base rates. During the initial Surcharge true-up period, and thereafter when the return component on the Acquisition Adjustment is built into base rates, we will consider fifty percent of net margins on off-system sales attributable to the additional Harrison capacity as available for return on, and of, the remaining balance of the $257 million Acquisition Adjustment authorized in this case. This will not affect the [Expanded Net Energy Cost] calculations. If the monthly accumulation of return requirements previously built into the initial surcharge and thereafter base rates of [Mon Power and Potomac] between base rates exceed the allowable amount based on the achieved net margins on off-system sales, a prospective adjustment credit will be embedded in prospective base rates. If the monthly accumulation of return requirements previously built into the initial surcharge or base rate of [Mon Power and Potomac] between base rate cases is less than the allowable amount based on the achieved net margins of off-system sales, no prospective adjustment will be made to base rates. Each base rate case will reset the balance of the net return components to allowable amount on the achieved net margins of off-system sales to zero.

Mon Power, Potomac, AE Supply, and FirstEnergy accepted the conditions. Thereafter, in its October 7, 2013, order, the Commission found the transaction, subject to the joint

5

stipulation and the additional conditions, to be fair, reasonable, and in the public interest. The petitioner now appeals the Commission's order.

## II. STANDARD OF REVIEW

This Court's standard of reviewing the Commission's order in this case is highly deferential given that this case involves complex issues and arcane concepts that fall within the special competence of the Commission and are governed by Commission precedent. This Court previously has recognized that "[a] public utility commission has broad powers in supervising and regulating the actions of utilities within its jurisdiction in the respects provided for in the statutory or constitutional provisions by which its authority is conferred." *United Fuel Gas Co. v. PSC*, 154 W. Va. 221, 241, 174 S.E.2d 304, 316 (1969) (citation omitted). Further, this Court has recognized that "on questions of expediency, or as to what would be best in the interest of the petitioner, or the public served . . . the Legislature intended that the judgment of the [Public Service] Commission should prevail." *United Fuel Gas Co. v. PSC*, 73 W. Va. 571, 591, 80 S.E. 931, 939 (1914).

Based on these considerations, this Court has stated our standard of review as follows:

> The detailed standard for our review of an order of the Public Service Commission contained in Syllabus Point 2 of *Monongahela Power Co. v. Public Service Commission*, 166 W. Va. 423, 276 S.E.2d 179 (1981), may be summarized as follows: (1) whether the Commission exceeded its statutory jurisdiction and powers; (2) whether there is adequate

6

> evidence to support the Commission's findings; and, (3) whether the substantive result of the Commission's order is proper.

Syl. pt. 1, *Cent. W. Va. Refuse v. PSC*, 190 W. Va. 416, 438 S.E.2d 596 (1993). This Court also has indicated that "'an order of the public service commission based upon its finding of facts will not be disturbed unless such finding is contrary to the evidence, or is without evidence to support it, or is arbitrary, or results from a misapplication of legal principles.' *United Fuel Gas Company v. The Public Service Commission*, 143 W. Va. 33[,] [99 S.E.2d 1 (1957)]." Syl. pt. 5, in part, *Boggs v. PSC*, 154 W. Va. 146, 174 S.E.2d 331 (1970). Finally, we have indicated that "[t]his Court will not substitute our judgment for that of the Public Service Commission on controverted evidence." Syl. pt. 2, *Chesapeake v. PSC*, 171 W. Va. 494, 300 S.E.2d 607 (1982), *modified on other grounds by Cent. W. Va. Refuse v. PSC*, 190 W. Va. 416, 438 S.E.2d 596 (1993). With these standards to guide us, we now proceed with our discussion of the issues.

## II. DISCUSSION

### *A. Mootness*

Before this Court considers the petitioner's assignments of error, we first must address an issue raised by Mon Power and Potomac in their response brief. Specifically, these respondents assert that the subject matter of this appeal is moot because the transaction at issue already has closed. According to these respondents, the petitioner did not request a stay of the Commission's order. As a result, the transaction is now completed. Therefore this Court cannot now grant the petitioner the relief it seeks.

7

The petitioner replies that the primary legal error of which it complains is the passing along to rate payers the $257 million acquisition adjustment paid by Mon Power for the Harrison plant. The petitioner explains that this has not yet occurred. Thus, says the petitioner, this Court can still grant the petitioner the relief it seeks which is preventing the $257 million from being passed along to Mon Power's customers.

This Court previously recognized that "[m]oot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or of property, are not properly cognizable by a court." Syl. pt. 1, *State ex rel. Lilly v. Carter*, 63 W. Va. 684, 60 S.E. 873 (1908). We further have indicated that "the heavy burden of persuading the court that the case has been rendered moot lies with the party asserting mootness." *State ex rel. Bluestone Coal v. Mazzone*, 226 W. Va. 148, 156, 697 S.E.2d 740, 748 (2010) (internal brackets, quotations, and citation omitted).

Mon Power and Potomac have failed to meet their heavy burden of showing that this appeal is moot. While the transaction at issue seems to be substantially complete, it appears to be undisputed that rate payers have not yet begun paying any of the $257 million acquisition adjustment. At this point, this Court could still find that it is improper to pass along any of the acquisition adjustment to the rate payers. If this Court were to so find, it would constitute more than an abstract proposition in that it would affect the actual rights of the parties to this appeal. Therefore, this Court determines that

8

Mon Power and Potomac's claims of mootness must fail. Accordingly, we will now address the assignments of error raised by the petitioner.

### B. Legality of Acquisition Adjustment

In a nutshell, the petitioner's position in this appeal is that the real purpose of the transaction at issue is to improve the precarious financial position of FirstEnergy, and that the transaction injures the financial position of Mon Power. In support of its position, the petitioner cites evidence of FirstEnergy's poor economic performance and debt, and that officers of FirstEnergy looked to the transaction at issue to resolve FirstEnergy's financial problems. In addition, the petitioner contends that Mon Power's purchase of the Harrison plant is not necessary to solve the shortage in Mon Power's capacity to produce energy, and that the purchase of the Harrison plant saddles Mon Power with a significant excess in energy for well over the next decade. Moreover, the petitioner challenges the Commission's finding that purchase of the Harrison plant is the least expensive alternative available to Mon Power in acquiring a greater capacity to produce energy. Further, the petitioner opines that Mon Power should not be permitted to pass along $257 million of the acquisition adjustment to its customers. Finally, the petitioner avers that the purchase of the Harrison plant is not in the public interest.

In its first assignment of error, the petitioner argues that the Commission's approval of Mon Power's recoupment of the $257 million acquisition from Mon Power's customers is erroneous as a matter of law because it violates Commission precedent.

9

According to the petitioner, the Commission generally has allowed recoupment of acquisition adjustments from customer rates only under extraordinary circumstances such as where it was necessary to save a distressed utility so as not to interrupt customer service. The petitioner cites several Commission cases in support of its argument.

The Commission asserts, to the contrary, that the allowance of a recovery of an acquisition adjustment does not violate Commission precedent, including the cases cited by the petitioner. The Commission distinguishes all but one of the cases relied upon by the petitioner from the facts of the instant case. With regard to the remaining case, the Commission cites the conclusion of law in that case which provides that absent adequate sufficient justification, the Commission will not approve the public utility acquisition price that is significantly in excess in net book value of the utility assets to be acquired. The Commission further indicates that it approved the recovery of the acquisition adjustment in that case on the bases of the combination of the operational efficiencies to be gained and the public interest served by the subject transaction. The Commission explains that it applied the same rule to the instant case and found sufficient justification for allowing Mon Power's recoupment of the $257 million acquisition adjustment in customer rates.

In its reply brief, the petitioner argues that while it recognizes that the Commission has allowed exceptions to the rule against passing along acquisition

10

adjustments to customers, there is no plausible basis for making such an exception in the instant case.

With regard to the precedential value of administrative agency decisions, this Court has indicated that a

> lack of uniformity is unavoidable – after all, administrators are not automatons – and does not in and of itself invalidate agency action. While a certain amount of asymmetry is lawful, an agency may not adopt significantly inconsistent policies that result in the creation of conflicting lines of precedent governing the identical situation. The precept counseling avoidance of inconsistent administrative policies at least demands that when an agency departs significantly from its own precedent, it must confront the issue and explain the reasonableness of its current position. Before this Court, an agency will not be permitted to flirt [sic] serendipitously from case to case, like a bee buzzing from flower to flower, making up its rules and policies as it goes along.

*State ex rel. Hoover v. Berger*, 199 W. Va. 12, 19, 483 S.E.2d 12, 19 (1996) (quotations and citations omitted). Upon our review of the parties' arguments and the Commission decisions cited, we find that the Commission has not applied a rule in the instant case that is significantly inconsistent with its precedent.

Further, we find no merit to the petitioner's contention that there is not a sufficient basis for the Commission to allow the recoupment of the $257 million acquisition adjustment under the facts of this case. In its order, the Commission summarized the benefits of Mon Power's purchase of the Harrison plant and cited evidence of these benefits in the record. The Commission found that the Harrison plant is

11

a valuable asset that can meet Mon Power's need for additional electric generating capacity. Moreover, the Commission found that the plant will continue to contribute to the economy and well-being of North Central West Virginia; it uses West Virginia coal and will help preserve mining jobs over the long term; the plant has low operating costs, it already has installed environmental controls, and it has ongoing plans for additional controls to comply with applicable federal standards; and the plant's additional capacity to produce energy will generate expected profits from future sales. The Commission further found that the risk associated with Mon Power's continued minority ownership interest in the Harrison plant will be eliminated by its complete ownership of the plant. Finally, the Commission determined that the alternatives for the generation of additional electric capacity involve higher costs. The Commission concluded that the transaction as modified by the provisions of the joint stipulation and the additional conditions imposed by the Commission provide a sufficient justification for allowance of the recovery of the acquisition adjustment. This Court finds no error in the Commission's conclusion.

### C. Acquisition Adjustment and Previous Merger Order

Prior to discussing the petitioner's second assignment of error, we find it necessary to set forth some background information. In 2010, there was a merger of Allegheny Energy and FirstEnergy, the holding company for both Mon Power and AE Supply. At that time, Mon Power had a 21% ownership interest in the Harrison power plant and AE Supply had a 79% ownership interest in the plant. After the merger of FirstEnergy and Allegheny Energy, FirstEnergy increased the book value of AE Supply's

12

79% ownership interest to its estimated fair market value. The Commission approved the 2010 merger of FirstEnergy and Allegheny Energy subject to a condition, which was recorded in a joint stipulation and incorporated into the Commission's final order in that case as follows:

> FirstEnergy will make no attempt to recover through the rates of Mon Power or Potomac Edison in West Virginia Merger transaction costs, which include: purchase price goodwill, consultant fees, fees for investment services, legal fees, regulatory fees, or lender consents; costs associated with the shareholders' meetings and proxy statement/registration statement related to the Merger, tail insurance, change in control payment, or retention payment resulting from completion of the Merger and the costs associated with the imposition of conditions or approval of settlement terms in other state jurisdictions (collectively, "Transaction Costs"). Joint Petitioners believe that this reflects an exhaustive list of Transaction Costs; however, the other Parties reserve the right to see whether there are other incurred costs that might fit within such category and advocate in the next base rate case that such costs should be disallowed as non-recoverable Transaction Costs.

The 2010 merger stipulation further states that "FirstEnergy agrees that in future base rate proceedings of Mon Power or Potomac Edison in West Virginia, the regulatory capital structure used for Mon Power and Potomac Edison will not reflect any acquisition premium or 'goodwill' associated with the Merger transaction."

The Commission determined in its order in the instant case that the 2010 merger stipulation does not prohibit the transaction in the instant case, and explained its determination as follows:

13

The intent of the [2010] Merger Stipulation was to prevent First Energy and [Mon Power and Potomac] from requesting an increased West Virginia jurisdictional rate base valuation related to the First Energy purchase price of Allegheny Energy in excess of book value at the time of the merger. . . . Pursuant to the Merger Stipulation, First Energy could not push down or allocate any return requirement or expenses that would be intended to compensate it for the excess purchase price of Allegheny Energy. The Commission has found no evidence in the record that indicates the value of the current assets of [Mon Power and Potomac] have been impacted by the Merger-related accounting entries.

. . . .

[T]he effect of the argument that the [2010] Merger Agreement is violated by the Transaction [between Mon Power and AE Supply] is to contend that the Commission is precluded from determining whether it is in the public interest for [Mon Power and Potomac] to acquire Harrison at a price that exceeds net original book value. We believe that the contention that the Merger Stipulation from [the 2010 case] binds our efforts in this and future cases is inconsistent with the delegation of Legislative authority that is the heart of the public utility regulatory scheme in place.

(Footnote omitted).

The petitioner posits that the plain and unambiguous language of the 2010 merger stipulation prohibits exactly what the Commission approved in the instant case which is the pass through to West Virginia customers of a portion of the $589 million acquisition adjustment in AE Supply's ownership interest in the Harrison plant as a result of the 2010 merger. The petitioner emphasizes the specific language of the merger stipulation which bars the inclusion in the rate base of "any acquisition premium or 'goodwill' associated with the Merger transaction." Clearly, opines the petitioner, the

14

$257 million acquisition adjustment in the instant case is "associated with the Merger transaction" in that this sum represents a portion of the acquisition adjustment made to AE Supply's ownership interest in the Harrison plant at the time of the merger.

The Commission replies that the 2010 merger stipulation does not contain a specific provision about the potential future transfer of AE Supply's ownership in the Harrison plant to Mon Power. Consequently, the Commission characterizes the petitioner's argument that the 2010 merger stipulation affects the current transaction as idle speculation. Further, the Commission contends that there is no legal precedent or justification for the petitioner's claim that the Commission is contractually bound by a previous merger stipulation.

Respondents Mon Power and Potomac assert that the Commission has broad powers, granted by the Legislature, to appraise and balance the interests of current and future utility customers, the general interests of the state's economy and the interests of utilities subject to its jurisdiction. These respondents assert that to carry out its duties properly, the Commission necessarily must have the flexibility to address the needs and interests of each party to a case at the time the case arises. Thus, say these respondents, the Commission cannot be handcuffed by a prior stipulation that occurred in a separate case.

15

In its reply brief, the petitioner avers that Mon Power and Potomac's petition for approval of the transaction, as originally proposed, recognized that they were seeking to recoup the $589 acquisition adjustment that resulted from the 2010 merger. According to the petitioner, the Commission rewrote Mon Power and Potomac's petition to evade the unambiguous 2010 merger stipulation. The petitioner reiterates that the Commission's interpretation of the merger stipulation contravenes the stipulation's express language.

This Court agrees with the Commission's determination that its order in the instant case does not violate the 2010 merger stipulation. First, the 2010 merger stipulation does not expressly anticipate the future transfer of AE Supply's ownership of the Harrison plant to Mon Power. Therefore, we cannot conclude that the merger stipulation unambiguously applies to the transaction before us. Further, the Commission has broad power to address the interests of each party, ratepayers, and the state in every case that comes before it based on the standards set forth in W. Va. Code § 24-2-12 (1984).[5] Consequently, the Commission generally should not be bound by a stipulation in

---

[5] With regard to the Commission's broad authority, W. Va. Code § 24-1-1(a) (1986) provides:

> It is the purpose and policy of the Legislature in enacting this chapter to confer upon the Public Service Commission of this State the authority and duty to enforce and regulate the practices, services and rates of public utilities in order to:
> (1) Ensure fair and prompt regulation of public utilities in the interest of the using and consuming public;

16

a prior case when the application of the prior stipulation to the case currently before the Commission is not indisputable. Therefore, this Court concludes that the Commission did not err in ruling that the 2010 merger stipulation does not affect the Commission's disposition of the instant case.

### D. Arbitrariness of $257 Million Acquisition Adjustment

The petitioner's third assignment of error is with regard to the additional conditions that the Commission placed on the purchase of the Harrison plant which are set forth above.

The petitioner essentially contends that these conditions are arbitrary in their disparate treatment of Mon Power's $332 million acquisition adjustment that cannot

---

(2) Provide the availability of adequate, economical and reliable utility services throughout the State;

(3) Encourage the well-planned development of utility resources in a manner consistent with state needs and in ways consistent with the productive use of the State's energy resources, such as coal;

(4) Ensure that rates and charges for utility services are just, reasonable, applied without unjust discrimination or preference, applied in manner consistent with the purposes and policies set forth in article two-a [§§ 24-2A-1 et seq.] of this chapter, and based primarily on the costs of providing these services;

(5) Encourage energy conservation and the effective and efficient management of regulated utility enterprises . . . .

In addition, in W. Va. Code § 24-1-1(b), the Legislature charges the Commission "with the responsibility for appraising and balancing the interests of current and future utility customers, the general interests of the State's economy and the interests of the utilities subject to its jurisdiction in its deliberations and decisions."

be passed along to customers and the $257 million that can be passed along. The petitioner further contends the Commission's attempt to shield ratepayers from risk via the conditions is ineffective, and that the benefits of the transaction at issue to the citizens of West Virginia have been overstated.

The Commission responds that W. Va. Code § 24-2-12 expressly permits it to conditionally approve a transaction. In addition, the Commission explains that its concerns with the transaction, even as modified by the joint stipulation, caused it to approve a lesser acquisition adjustment than originally sought. While the petitioner suggests that these concerns should have caused the Commission to deny the acquisition adjustment *in toto*, the Commission does not agree.

Respondents Mon Power and Potomac counter that there is nothing arbitrary about the Commission's conditions for the transaction. Rather, these conditions are closely tailored to address the Commission's concerns about the joint stipulation as proposed. The respondents further indicate that while the Commission-imposed conditions do not protect customers of Mon Power from all risk, the customers receive greater protection than if Mon Power was allowed to pass along the whole $589 million to its customers.

This Court does not find the decision at issue regarding the Commission-imposed conditions to be arbitrary. The Commission explained its concerns which caused

18

it to add conditions to the proposed transaction, as modified by the joint stipulation, and it appears to this Court that the conditions are closely tailored to address these concerns. Therefore, we find no error.

### E. Undue Advantage

In its final assignment of error, the petitioner argues that FirstEnergy had an undue advantage in executing the transaction in this case in that its officers were in a position to dictate the terms of the transaction between and among its subsidiaries.[6] The petitioner asserts that the real purpose of the sale of the Harrison plant to Mon Power was not to remedy a shortfall in Mon Power's electric generation capacity but rather to shore up FirstEnergy's widely-recognized highly precarious financial position. According to the petitioner, evidence of the motivation for the transaction is found in the fact that Mon Power produced no documents in discovery evidencing the purported arms-length negotiations between FirstEnergy's wholly-owned subsidiaries which resulted in "this totally unbalanced" transaction. Finally, the petitioner opines that the absence of an arms-length negotiation is the best explanation for Mon Power's casual agreement to the joint stipulation's $332 million reduction from the $589 million initially proposed to be included in Mon Power's rate base.

---

[6] According to W. Va. Code § 24-2-12, the Commission may grant its consent to a transaction "upon proper showing that the terms and conditions thereof are reasonable *and that neither party thereto is given an undue advantage over the other*, and do not adversely affect the public in this State." (Emphasis added).

The Commission counters that W. Va. Code § 24-2-12 does not require arms-length negotiations as a part of its prohibition against an undue advantage in inter-affiliate transactions. Instead, contends the Commission, the test is whether the transaction, as negotiated, gives one of the parties an undue advantage over the other. The Commission asserts that the fact that one of the entities had a superior bargaining position during the transactions is not relevant under the above-referenced code section. Also, says the Commission, the determination whether there is an undue advantage is necessarily addressed in the Commission's analysis of the overall transaction. The Commission concludes that its approval of the transaction did not violate the statutory prohibition against an undue advantage in inter-affiliate transactions.

Respondents Mon Power and Potomac contest the petitioner's version of the facts on this issue, and assert that the petitioner's claim of undue advantage is demonstratively wrong and not supported by the evidence. According to these respondents, affirmative evidence was presented below that the Transaction was negotiated with the objective of zealously advancing Mon Power's interests and those of its customers. These respondents conclude that the petitioner's arguments to the contrary are conjectural.

In its reply brief, the petitioner disputes the Commission's construction of the statutory term "undue advantage" by citing to several Commission orders in which the Commission discussed whether negotiations were arms-length in determining the

issue of undue advantage. Also, the petitioner maintains that evidence of undue advantage exists through the testimony of the two persons who negotiated the transaction which demonstrated they made no attempt to negotiate a smaller ownership stake in the Harrison plant, that they made no attempt to use the issue of the potential 2010 merger stipulation violation to negotiate a lower purchase price, and that they did not attempt to negotiate the transaction as a stock deal.

This Court finds that there is evidence to support the Commission's finding that the transaction at issue did not provide an unfair advantage to any of the parties. Significantly, inter-affiliate transactions are not *per se* invalid under W. Va. Code § 24-2-12. Moreover, this Court has found it proper for the Commission to approve inter-affiliate transactions. *See United Fuel Gas Co. v. PSC*, 154 W. Va. 221, 174 S.E.2d 304 (1969) (reversing the PSC's denial of a realignment plan between public utilities all of which were subsidiaries of a parent holding corporation). The Commission specifically found that the transaction at issue does not give one party an undue advantage over another party, and the petitioner has failed to convince us that this finding is in error.

In sum, while conflicting evidence was presented below and reasonable parties can disagree regarding the proper resolution of this case, it is the Commission's role to weigh the evidence and make a decision. The Commission has carefully explained its decision in an order that contains findings of fact, conclusions of law, and a reasoned analysis of the issues. The petitioner has failed to convince this Court that the

21

Commission's findings are contrary to the evidence, without evidence to support them, arbitrary, or that the Commission's application of the law is inconsistent with Commission precedent. As a result, under this Court's highly deferential standard of review, we find no reason to disturb the Commission's order.

## IV. CONCLUSION

For the reasons stated above, the October 7, 2013, order of the Public Service Commission in case numbers 12-1571-E-PC and 13-1272-E-PW is affirmed.

Affirmed.