IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2026 Term

_____

No. 25-315

_____

BECKLEY WATER COMPANY,
Petitioner,

V.

PUBLIC SERVICE COMMISSION OF WEST VIRGINIA
and CITY OF MOUNT HOPE,
Respondents.

FILED

**June 1, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

Appeal from the Public Service Commission of West Virginia
Case No. 23-0807-W-C

AFFIRMED

_____

Submitted: March 24, 2026
Filed: June 1, 2026

Devon J. Stewart, Esq.
Todd M. Swanson, Esq.
Christopher G. Robinson, Esq.
Steptoe & Johnson PLLC
Charleston, West Virginia
Attorneys for the Petitioner Beckley
Water Company

Jordan Martin Blatt, Esq.
Robert M. Adkins, Esq.
Public Service Commission of West
Virginia
Charleston, West Virginia
Attorneys for the Respondent Public
Service Commission of West Virginia

James V. Kelsh, Esq.
Corey Bonasso, Esq.
Bowles Rice LLP
Charleston, West Virginia

Attorneys for the Respondent City of Mount Hope

CHIEF JUSTICE BUNN delivered the Opinion of the Court.

JUSTICE WOOTON, deeming himself disqualified, did not participate in the decision of this case.

JUDGE RYAN WHITE, sitting by temporary assignment.

JUSTICE EWING, deeming himself disqualified, did not participate in the decision of this case.

JUDGE STEPHANIE ABRAHAM, sitting by temporary assignment.

**SYLLABUS BY THE COURT**

1.      "The detailed standard for our review of an order of the Public Service Commission contained in Syllabus Point 2 of *Monongahela Power Co. v. Public Service Commission*, 166 W. Va. 423, 276 S.E.2d 179 (1981), may be summarized as follows: (1) whether the Commission exceeded its statutory jurisdiction and powers; (2) whether there is adequate evidence to support the Commission's findings; and, (3) whether the substantive result of the Commission's order is proper." Syllabus Point 1, *Central West Virginia Refuse, Inc. v. Public Service Commission of West Virginia*, 190 W. Va. 416, 438 S.E.2d 596 (1993).

2.      "Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syllabus Point 1, *Pool v. Greater Harrison County Public Service District*, 241 W. Va. 233, 821 S.E.2d 14 (2018) (quoting Syllabus Point 1, *Appalachian Power Co. v. State Tax Department of West Virginia*, 195 W. Va. 573, 466 S.E.2d 424 (1995)).

3.      "It is not for this Court arbitrarily to read into a statute that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature

i

purposely omitted." Syllabus Point 11, *Brooke B. v. Ray*, 230 W. Va. 355, 738 S.E.2d 21 (2013).

**BUNN, Chief Justice:**

Petitioner Beckley Water Company ("BWC") appeals the Public Service Commission of West Virginia's ("PSC") decision finding that the Appalachian Heights Site is located within a gray and overlapping service territory, meaning that a future developer or customer may choose either BWC or the City of Mount Hope ("Mount Hope") as its water service provider. On appeal to this Court, BWC argues that the PSC exceeded its statutory authority and improperly reconsidered a final decision that the Appalachian Heights Site is within BWC's exclusive water service territory. BWC also asserts that the PSC erred in its analysis designating the Appalachian Heights Site as a gray and overlapping service territory. Both the PSC and Mount Hope contend that the PSC did not err and that the PSC's decision should be affirmed. We determine that the PSC had the statutory authority to reconsider its previous decision that BWC was the exclusive water service provider to the Appalachian Heights Site and further conclude that the PSC did not err in finding that the Site was in a gray and overlapping service territory.

## I.

### FACTUAL AND PROCEDURAL HISTORY

BWC is a privately owned public utility company that provides water service to certain customers in Raleigh and Fayette Counties, West Virginia.[1] Relevant to this

---

[1] BWC represents that it provides "direct service to approximately 22,500 customers in Raleigh and Fayette Counties, West Virginia" and "resale service to four water utilities."

matter, BWC serves multiple Raleigh County customers near an undeveloped piece of property located in Bradley, West Virginia, known as Appalachian Heights ("the Site"). Mount Hope is a municipal corporation in Fayette County, and also provides water services as a public utility. On April 18, 2023, Mount Hope Mayor Mike Kessinger informed the Fayette County Commission about Mount Hope's "Appalachian Heights Water Extension" project. Mayor Kessinger explained that Mount Hope had already received $2 million from the West Virginia Legislature, $2 million from the Raleigh County Commission, and $250,000 from a developer for the project. The project required an additional $250,000 from the Fayette County Commission, which it ultimately approved.

In October 2023, BWC filed a complaint requesting the PSC issue a cease and desist order to Mount Hope regarding the proximity of Mount Hope's proposed extension of water utility service to the Site. Following a hearing, the PSC's chief administrative law judge ("Chief ALJ") issued a recommended decision on April 19, 2024, concluding that the Site is within BWC's exclusive service territory.[2] However, the Chief

_____

[2] At the time, the PSC staff argued that the matter should have been dismissed as premature and that the proper time for a decision would have been after the filing of a certificate of necessity. Ultimately, the Chief ALJ determined that a decision as to BWC's exclusive service territory was appropriate because, according to the PSC staff, a certificate of necessity may not even be required in this circumstance. The Chief ALJ further noted that Mount Hope failed to provide any witnesses and that other entities, such as the New River Gorge Development Authority, failed to communicate with the PSC staff. Thus, the Chief ALJ found that the PSC should not be "stonewalled in its effort to fulfill its statutory obligations regarding well-planned infrastructure expansions."

ALJ found that the issuance of a cease and desist order would be premature because "[i]t is possible" that Mount Hope's proposed project "is not primarily a project to steal [the Site] from BWC" and Mount Hope's proposed project could achieve "other beneficial and necessary goals." Neither BWC nor Mount Hope filed exceptions to the April 2024 Recommended Decision and it became final on May 9, 2024.

Shortly thereafter, BWC filed a petition to reopen the matter, alleging that Mount Hope proposed to annex the Site to provide water services. BWC argued that the proposed annexation altered the matter's posture and that a cease and desist order was appropriate. Mount Hope and the PSC staff opposed the petition to reopen. The PSC ultimately reopened the case and remanded it to the Chief ALJ for further proceedings, including a determination as to whether annexation by Mount Hope had occurred, the extent of the annexation, and whether the annexation affected any superior service rights. Subsequently, the parties agreed that Mount Hope had annexed certain property in Raleigh County, including the Site. The Chief ALJ ordered the parties to address how the annexation impacted the PSC's previous ruling regarding BWC's exclusive service to the Site. Mount Hope claimed that the annexation gave it superior service rights based on statute.[3] The PSC staff argued a hearing was necessary to determine whether Mount Hope

---

[3] This Court has held that, under certain circumstances, West Virginia Code § 16-13A-8 gives a superior service right to municipalities:

had superior service rights or if the Site was now in a gray and overlapping area. BWC contended that the annexation had no effect on the PSC's previous ruling.

Without holding an additional hearing, on November 15, 2024, the Chief ALJ issued a recommended decision, prohibiting Mount Hope from providing water service to the Site or providing bulk water to any entity for the purpose of providing water service to the Site. The Chief ALJ reaffirmed that the Site is within BWC's exclusive service territory and that Mount Hope offered no persuasive legal argument that its annexation of the Site impacted the PSC's previous ruling.

Mount Hope timely filed exceptions to the November 2024 Recommended Decision, requesting that the PSC find that the Site is in a gray and overlapping service area. Both BWC and the PSC staff opposed Mount Hope's exceptions. In its February 20,

---

If a tract of real estate located within a public service district has been annexed into a municipality, then, as between the municipality and the public service district, the municipality has the superior right, under *W. Va. Code* § 16-13A-8 (1981), to extend public services, such as water and/or sewer service, which were not being previously furnished to the tract by the public service district.

Syl. Pt. 3, in part, *Berkeley Cnty. Pub. Serv. Sewer Dist. v. W. Va. Pub. Serv. Comm'n*, 204 W. Va. 279, 512 S.E.2d 201 (1998). Ultimately, the PSC did not extend the superior service rights of a municipality over a public service district to BWC, a privately owned public utility. This finding is not before the Court and we do not make any determinations in this regard.

4

2025 order, the PSC granted Mount Hope's exceptions, concluding that the Site is in a gray and overlapping service area, and that a future developer or customer may choose either BWC or Mount Hope as its water service provider. In support of its decision, the PSC found that: (1) pursuant to the annexation, the Site was now within Mount Hope's corporate limits; (2) any developer or future customer would be a new user of water service to the Site; (3) neither BWC nor Mount Hope have served any customers at the Site because it, as of yet, is undeveloped; and (4) BWC and Mount Hope have existing facilities in the area such that each could provide water service to the Site. Moreover, the PSC found that even "[b]efore annexation, the [Site] could have been considered gray and overlapping because a municipality has statutory authority to serve outside its municipal limits."

BWC filed a petition for reconsideration of the PSC's February 2025 Order. In its April 16, 2025 order, the PSC reaffirmed its determination that the Site was within a gray and overlapping service territory, and accordingly, found that neither BWC nor Mount Hope had an exclusive right to provide water service to the Site. The PSC explained in its April 2025 Order that the Legislature had recently expressed its intent "for the [PSC] to support the extension of various utility services to potential development sites prior to having a tenant or business move on the premise." *See also* W. Va. Code § 24-2-1n (detailing the West Virginia Business Ready Sites Program).[4] The PSC concluded that

---

[4] In 2015, the Legislature expanded its directives to the PSC "to deploy progressive regulation to recognize utility infrastructure investments that upgrade aging gas

under the facts of this case, (1) it did not find "two-and-a-half miles as too far a distance to extend lines to serve the Site," (2) whether there was a current customer at the Site was a consideration but not determinative factor, (3) it should not delay in issuing a decision "when there is a potential line extension project that will have a positive economic impact," and (4) it considered the Site a gray and overlapping area before and after the annexation. Ultimately, the PSC denied BWC's petition for reconsideration of the February 2025 Order and vacated the April 2024 Recommended Decision. This appealed followed.

## II.

## STANDARD OF REVIEW

This case involves an appeal from a final order entered by the PSC. Our review of PSC final orders is "highly deferential" because of the "complex issues and arcane concepts that fall within the special competence of the Commission and are governed by Commission precedent." *W. Va. Citizen Action Grp. v. Pub. Serv. Comm'n*

---

transmission and distribution facilities, and promote expansion of gas utility service to areas of the State previously unserved." *Harrison Rural Electrification Ass'n, Inc. v. Monongahela Power Co.*, Case No. 18-1450-E-C at 6 (Comm'n Order, March 26, 2019). Furthermore, in 2019, the Legislature created the "West Virginia Business Ready Sites Program." *Id.*; W. Va. Code § 24-2-1n. This legislation directs the PSC "to support the extension of various utility services to potential development sites prior to having a tenant or business move on the premise." *HREA*, Case No. 18-1450-E-C at 6. Because the PSC already must balance multiple interests pursuant to West Virginia Code § 24-1-1, the PSC has "interpret[ed] these innovative utility concepts promoted by the Legislature as a further mandate to consider, and where able, to promote economic development when it makes sense within the balancing language contained in W. Va. Code § 24-1-1." *Id.*

*of W. Va.*, 233 W. Va. 327, 331-32, 758 S.E.2d 254, 258-59 (2014) (per curiam). As we have recognized numerous times, "[a] public utility commission has broad powers in supervising and regulating the actions of utilities within its jurisdiction in the respects provided for in the statutory or constitutional provisions by which its authority is conferred." *Id.* at 332, 758 S.E.2d at 259 (alteration in original) (quoting *United Fuel Gas Co. v. Pub. Serv. Comm'n of W. Va.*, 154 W. Va. 221, 241, 174 S.E.2d 304, 316 (1969)). *See also Appalachian Power Co. v. Pub. Serv. Comm'n of W. Va.*, 251 W. Va. 44, 53, 909 S.E.2d 79, 88 (2024) (recognizing "the highly specialized knowledge and expertise of the Commission in considering complex cases[.]"). Our standard of review for final orders entered by the PSC reflects this substantial deference:

> [t]he detailed standard for our review of an order of the Public Service Commission contained in Syllabus Point 2 of *Monongahela Power Co. v. Public Service Commission*, 166 W. Va. 423, 276 S.E.2d 179 (1981), may be summarized as follows: (1) whether the Commission exceeded its statutory jurisdiction and powers; (2) whether there is adequate evidence to support the Commission's findings; and, (3) whether the substantive result of the Commission's order is proper.

Syl. Pt. 1, *Central W. Va. Refuse, Inc. v. Pub. Serv. Comm'n of W. Va.*, 190 W. Va. 416, 438 S.E.2d 596 (1993). Finally, because we are also being asked to consider whether the PSC exceeded its statutory authority, we examine this issue de novo: "Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl. Pt. 1, *Pool v. Greater Harrison Cnty. Pub. Serv. Dist.*, 241 W. Va. 233, 821

7

S.E.2d 14 (2018) (quoting Syl. Pt. 1, *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 466 S.E.2d 424 (1995)).

## III.

## DISCUSSION

BWC raises several assignments of error regarding the PSC proceeding below. First, BWC contends that the PSC exceeded its statutory authority and jurisdiction by improperly reconsidering the PSC's decision that the Site was within BWC's exclusive water service territory. To the extent that the PSC had the authority to reconsider that decision, BWC asserts that the PSC failed to conduct a proper analysis to determine whether the Site is within a gray and overlapping service territory. We disagree and conclude that the PSC had authority to reconsider its previous decision and further find that the PSC did not err in determining that the Site is located within a gray and overlapping service territory.

### *A. Statutory Authority and Jurisdiction*

The Court must first consider whether the PSC had statutory authority and jurisdiction to reconsider its previous decision concluding that the Site was within BWC's exclusive service territory. BWC argues that the PSC exceeded its jurisdiction in its February 2025 Order by addressing a question not properly before it: whether the Site is in a gray and overlapping service area. BWC contends that the only question properly before

8

the PSC at the time the case was reopened in September 2024 was whether Mount Hope's annexation of the Site—a change in circumstances since the April 2024 Recommended Decision—created a basis for a cease and desist order to enforce BWC's exclusivity of the Site. We do not agree.

This Court has recognized that "[t]he power of administrative authorities to reconsider or modify their own determinations may exist by reason of express provision of statute, or its existence may be inferred from a statutory provision." *Atl. Greyhound Corp. v. Pub. Serv. Comm'n*, 132 W. Va. 650, 659-60, 54 S.E.2d 169, 175 (1949). This determination requires a two-part inquiry:

> The first question is whether an agency's power to reconsider its own final order is expressly or impliedly granted by statute. If not, the second inquiry is whether the following two conditions are met: (a) the Legislature granted the agency authority to adopt administrative rules of procedure; and (b) the agency adopted an administrative rule allowing it to reconsider its own final orders.

*Reed v. Thompson*, 235 W. Va. 211, 215, 772 S.E.2d 617, 621 (2015) (citations omitted).

Relevant code and regulations allow the PSC to review its previous determinations. For instance, a party is permitted to file exceptions to a recommended decision of an administrative law judge within a certain time frame[5] or the PSC can review

---

[5] A party must serve any exceptions to a recommended decision within fifteen days from the date the recommended decision was mailed. *See* W. Va. Code R. § 150-1-19.1.

9

the recommended decision *sua sponte*. *See* W. Va. Code § 24-1-9(g). Within five days following the expiration of the period for filing exceptions,[6] the recommended decision becomes "the order of the commission[.]" *Id*. Here, the Chief ALJ issued the April 2024 Recommended Decision concluding that the Site was within BWC's exclusive service territory, Mount Hope did not file any exceptions, and the PSC did not take any action to review the decision on its own. The April 2024 Recommended Decision, therefore, became final pursuant to W. Va. Code § 24-1-9 on May 9, 2024.

Nevertheless, the PSC was not precluded from subsequently revisiting the decision. West Virginia Code § 24-2-2(a) provides, in relevant part, that "[e]very order entered by the commission shall continue in force until the expiration of the time, if any, named by the commission in the order, or *until revoked or modified by the commission*, unless the order is suspended, modified, or revoked by order or decree of a court of competent jurisdiction[.]" (Emphasis added). Thus, despite the finite deadlines announced in West Virginia Code § 24-1-9, the plain language of West Virginia Code § 24-2-2(a) provides the PSC with authority to revoke or modify a previously final order.

Regulations also allow for revocation or modification of final orders. West Virginia Code of State Rules § 150-1-19.5 permits a party to petition to reopen a closed

---

[6] This period may be extended if the PSC stays or postpones the time frame. *See* W. Va. Code § 24-1-9(g).

10

PSC matter.[7] Indeed, BWC invoked § 150-1-19.5 when it requested that the PSC reopen the matter. BWC urges this Court to find that Rule § 150-1-19.5 limits the scope of the reopening to matters which have arisen since the hearing and prevents the PSC from reconsidering a previously settled matter. BWC's narrow reading of this Rule fails to address the Rule's full text. Section 150-1-19.5 provides, in relevant part:

> An application for reopening of a proceeding more than ten (10) days after the entry of a Commission order must be made by petition of a party to the proceeding at the time of entry of the Commission order, duly verified, accompanied by a certificate showing service upon the attorneys of the other parties. *If thereby any Commission order is sought to be vacated, reversed, or modified, by reason of matters which have arisen since the hearing, or by reason of facts not in possession of the petitioner at the time of the hearing, the matter so relied upon by the petitioner must be fully set forth in the petition.*

(Emphasis added). Nothing in the Rule limits the authority or jurisdiction of the PSC after reopening to "matters which have arisen since the hearing." Instead, the provision simply states that *if* the party requesting the reopening is seeking vacation, reversal, or modification of a previous order and the basis for the request is a matter arising since the hearing, *then* that matter must be fully set forth in the petition.

---

[7] Other examples include petitions for reconsideration and petitions for modification of a previous PSC order to "[modify] clerical errors, change the date when they shall take effect, or change the period of notice thereby prescribed[.]" *See* W. Va. Code R. §150-1-19.3 and W. Va. Code R. §150-1-19.4. These provisions are inapplicable here.

11

As we have stated, "[i]t is generally accepted that statutes and administrative regulations are governed by the same rules of construction." *Snider v. Fox*, 218 W. Va. 663, 667, 627 S.E.2d 353, 357 (2006) (per curiam) (quotations and citations omitted). One of those rules provides that "[i]t is not for this Court arbitrarily to read into a statute that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." Syl. Pt. 11, *Brooke B. v. Ray*, 230 W. Va. 355, 738 S.E.2d 21 (2013).[8] BWC asks us to read into the regulation an additional limitation on the PSC's authority which is not reflected in its plain language. We decline to do so.

Additionally, BWC asserts that § 150-1-19.5 limits the reopening because BWC did not seek to revoke, vacate, or modify the previous final order, but rather it petitioned to reopen the matter to enforce a right given under the previous order. As with the provision regarding matters arising after the hearing, nothing in the Rule limits the scope of what may be considered by the PSC to only those matters set forth in the motion to reopen. We likewise refuse to overstep our role by reading such a limitation into the otherwise plain language of the Rule. Therefore, finding no statutory or regulatory limitations on the scope of reopening, it is clear that the PSC acted within its statutory

---

[8] *See also Putnam Park Apartments, Inc. v. Plan. & Zoning Comm'n of Town of Greenwich*, 218 A.3d 1127, 1135 (Conn. App. Ct. 2019) ("We will not read into a regulation words or limitations that are not there.").

authority and jurisdiction when it reopened the matter and revisited its previous decision regarding the appropriate water service provider to the Site.[9]

### B. Gray and Overlapping Service Territory Analysis

BWC asserts several assignments of error relating to the PSC's determination that the Site is located within a gray and overlapping service territory. Specifically, BWC lists three assignments of error regarding this determination in the opening section of its brief, but in the argument section, does not follow those assignments of error and raises several more. We address each of these issues but reorganize our analysis for clarity.

When multiple utilities seek to provide service to the same area the PSC must decide whether the area in dispute is located within the exclusive service territory of one utility or within a gray and overlapping service territory that may be served by multiple utilities. *See* W. Va. Code § 24-1-1 (setting forth the legislative purpose and policy of the PSC).[10] Because both BWC and Mount Hope indicated willingness to provide water

---

[9] While BWC also argues that the annexation was irrelevant to the PSC's decision to reopen, this argument is belied by the fact that BWC chose to use the annexation as its entire basis to reopen the matter.

[10] *See also* Syl. Pt. 6, *State ex rel. City of Wheeling v. Renick*, 145 W. Va. 640, 116 S.E.2d 763 (1960) ("The public service commission has the statutory power and authority to control the facilities, charges and services of all public utilities and to hear and determine the complaints of persons entitled to the services which such utilities afford; and the only limitation upon such power and authority is that the requirements shall not be contrary to law and that they shall be just and fair, just and reasonable, and just and proper.").

services to the Site, the PSC considered its statutory obligations and established tests to determine whether one or both utilities would be eligible to provide water service to the Site.

West Virginia Code § 24-1-1(a) authorizes and mandates the PSC to, in pertinent part:

    (1) Ensure fair and prompt regulation of public utilities in the interest of the using and consuming public;

    (2) Provide the availability of adequate, economical and reliable utility services throughout the state; [and]

    (3) Encourage the well-planned development of utility resources in a manner consistent with state needs and in ways consistent with the productive use of the state's energy resources, such as coal[.]

West Virginia Code § 24-1-1(b) further directs the PSC, when reviewing the cases before it, to balance (1) "the interests of current and future utility service customers," (2) "the general interests of the state's economy," and (3) "the interests of the utilities subject to its jurisdiction in its deliberation and decisions."

In furtherance of these statutory duties, when multiple utilities seek to serve an area, the PSC applies the following test to make the determination:

    (1)    Is the proposed customer a new user of the utility services in the area?

14

(2)     Is there evidence of prior service to the customer by either utility in the area?

(3)     Is the customer located in an overlapping service territory of the two utilities?

*Harrison Rural Electrification Ass'n, Inc. v. Monongahela Power Co.*, Case No. 03-0915-E-C, at 7 (Comm'n Order, May 11, 2005) (citing generally *Lumberport-Shinnston Gas Co., lnc. v. Equitable Gas Co.*, Case Nos. 86-749-G-C and 87-115-G-GI (Comm'n Order, Sept. 29, 1987)).[11] If the answer to prongs one and three of the *Lumberport* test is yes, and the answer to prong two is no, then the entity, customer, or area is in an overlapping service territory.  *See HREA*, Case No. 03-0915-E-C, at 15. Ultimately, if the PSC determines that "a customer is located within a gray and overlapping service territory, then the customer may choose from which utility to receive service." *Id.* (citing generally *Lumberport*, Case Nos. 86-749-G-C and 87-115-G-GI).[12]

---

[11] This test is referred to as "the *Lumberport* test" because the PSC derived these factors from *Lumberport-Shinnston Gas Co., Inc. v. Equitable Gas Co.*, where the PSC was asked to determine whether a business was located in a gray and overlapping service area of two competing gas companies. Case Nos. 86-749-G-C and 87-115-G-GI 92-0319-E-C (Comm'n Order, Sept. 29, 1987).

[12] Furthermore, when "resolving territorial disputes between utilities," the PSC "examin[es] the location of each utilities' facilities as those facilities currently exist." *Harrison Rural Electrification Ass'n, Inc. v. Monongahela Power Co.*, Case No. 03-0915-E-C, at 7 (Comm'n Order, May 11, 2005) (citing *Harrison Rural Electrification Ass'n, Inc. v. Pub. Serv. Comm'n of W. Va.*, 190 W. Va. 439, 444, 438 S.E.2d 782, 787 (1993) (per curiam)).

BWC argues that the PSC misapplied the third prong of the *Lumberport* test—whether the Site is in an overlapping service area—and that it is not satisfied under the facts of this case. The first two prongs of the test are not at issue in this case. This Court, therefore, must determine whether the PSC erred in its determination that the Site was located in an overlapping service territory pursuant to these statutory mandates and the *Lumberport* test. We conclude that it did not.

When examining the third prong of the *Lumberport* test, the PSC applies the isolation test to aide in its determination. *Monongahela Power Co. v. Harrison Rural Electrification Ass'n, Inc.*, Case No. 04-1062-E-C, at 6 (Comm'n Order, Aug. 24, 2005). The isolation test asks whether each utility desiring to provide service would be required under the relevant utility rules to provide service in the absence of the competing utility:

> One simple way to look at disputes such as this one is to isolate each utility's (A's and B's) service territory as if the other utility did not exist. If we assume only utility A exists, and assume the service location in question requested service from utility A, would the Commission's Rules and Regulations for the Government of [Water] Utilities, 150 C.S.R. [7], ([Water] Rules), and relevant case law, require utility A to provide service? In the alternative, if only utility B existed, would the [Water] Rules and relevant case law require utility B to serve if requested? If the answer to both questions is yes, then the service location is in a gray and overlapping service territory.

*Id.*

16

While BWC raises several issues concerning the PSC's analysis as to the third prong, we conclude that the PSC appropriately applied the isolation test. As an initial matter, BWC fails to appreciate that the PSC's "determination of service territory must be done on a case by case basis." *Harrison Rural Electrification Ass'n, Inc. v. Monongahela Power Co.*, Case No. 92-0319-E-C, at 2 (Comm'n Order, April 26, 1996). *See also HREA*, Case No. 92-0319-E-C, at 4 ("Each case must be examined individually and many factors considered including the location of the utility's various facilities and customers as well as service histories.").[13] Here, the PSC considered the relevant facts of the case, including that the Site was now within Mount Hope's corporate limits due to the annexation and that both BWC and Mount Hope had existing facilities in the area. Moreover, the PSC, pursuant to its statutory duty, considered and balanced the interests of the utility customers, the general interests of the State's economy, and the interests of utilities within its jurisdiction. *See* W. Va. Code § 24-1-1(b).

---

[13] Despite the PSC's case-by-case determination, BWC asserts that the PSC ignored its own prior decisions, including finding that a one-mile distance from the provider to the customer was too far to create an overlapping service area and that a proposed utility line extension that required crossing another utility's lines weighs against finding a location to be in a gray and overlapping area. *See generally Harrison Rural Electrification Ass'n, Inc. v. Monongahela Power Co.*, Case No. 96-0747-E-C (Comm'n Order, September 18, 1997); *see also generally Harrison Rural Electrification Association, Inc. v. Monongahela Power Company*, Case No. 92-0319-E-C (Comm'n Order, April 26, 1993). BWC's argument is unpersuasive because neither of those matters involved similar facts to the present matter, including the unusual posture of this case, i.e. no existing customer is currently requesting service; the Site is the subject of economic development; and the Legislature, multiple county commissions, and a developer have already contributed significant economic development funds to finance the extension of the water lines.

17

Applying the isolation test, the PSC made the initial finding that Mount Hope had annexed the Site and the Site was now a part of Mount Hope's corporate limits. *See* W. Va. Code § 8-6-5(a) (indicating that a municipality can increase its corporate limits by making a minor boundary adjustment if certain conditions are satisfied). This finding is significant because, though not a determinative factor, it is relevant to the PSC's analysis of whether Mount Hope would be required to provide water service to the Site under the isolation test. Generally, a municipality has the statutory authority to "erect, establish, construct, acquire, improve, maintain and operate . . . a waterworks system, . . . within or without the corporate limits of the municipality[.]" W. Va. Code § 8-12-5(31). A municipality may maintain, operate, or extend a waterworks system, provided that the municipality "shall not serve or supply water facilities . . . or services within the corporate limits of any other municipality or county commission" without consent. W. Va. Code § 8-19-1. Furthermore, "[a] water utility, whether publicly or privately owned, is under a public service obligation to extend its mains, and its plant and facilities to serve new customers within its service area who may apply for service." W. Va. Code St. R. § 150-7-7.5.1.

Moreover, the PSC considered that Mount Hope has existing facilities in the area, within a two and a half mile radius, that could be used to provide service to the Site. The PSC also contemplated the Legislature's intent to "support the extension of various utility services to potential development sites prior to having a tenant or a business move

18

on the premise." While BWC contends that the PSC misapplied the isolation test because it examined what Mount Hope was able and willing to do, not how its facilities currently exist, this argument is misplaced. As stated herein, the PSC examined the facilities as they currently exist, found that two and a half miles was not too far a distance to provide service, and that Mount Hope has already secured project funds for the extension. BWC asserts that in *Lumberport*, the PSC rejected the premise that willingness is a factor in the analysis; however, the facts of *Lumberport* are distinguishable because the utility in that case was attempting to provide service to customers another utility was already serving and to a site the other utility had previously served. *Lumberport*, Case No. 86-749-G-C at 14. That is in stark contrast to the situation here—where future customers are not yet being served by any utility. Finally, the PSC recognized that Mount Hope had already secured the $4.5 million project funds to complete the water extension project.

BWC has not directed us to any authority, statutory or otherwise, that supports its position that it was improper for the PSC to consider these factors in its analysis. Accordingly, under these circumstances, where a public utility has economic development property within its corporate limits and has obtained significant funds, we apply our deferential standard of review and find no reversible error in the PSC's determination that Mount Hope would be required to provide service to the Site, thus

satisfying the isolation test.[14] The PSC's reasoning in reaching its decision that the Site is located within a gray and overlapping service territory is legally sound and supported by the record evidence. Given the deferential standard of review this Court affords to orders of the PSC, we affirm.[15]

## IV.

## CONCLUSION

For the foregoing reasons, we affirm the PSC's order.

Affirmed.

---

[14] BWC also alleges that the PSC misapplied the isolation test because the PSC's order refers to the "Electrical Rules" rather than the "Water Rules." However, the PSC was simply citing the case, *Monongahela Power Company v. Harrison Rural Electrification Association, Inc. v. Monongahela Power Company*, Case No. 04-1062-E-C, at 6 (Comm'n Order, Aug. 24, 2005), where the PSC examined the Electrical Rules. Nothing in the remainder of the PSC's order indicates that the PSC utilized the wrong set of rules in its analysis.

[15] Finally, BWC asks that if this Court decides that the territory dispute is not ripe for a cessation order, then we should vacate the PSC's order and reinstate the original ALJ's Recommended Decision. Because we find that the PSC did not err, we decline to do so.

20