STATE OF WEST VIRGINIA

**City of Kenova, West Virginia**
**Petitioner**

**FILED**
**May 26, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)      No. 19-0919**  (PSC Case No. 18-1232-S-C)

**The Public Service Commission of West Virginia,**
**Respondent**

## MEMORANDUM DECISION

Petitioner City of Kenova (City)[1] appeals the September 6, 2019 order of the Public Service Commission of West Virginia (Commission)[2] requiring the City to make a leak adjustment credit in the amount of $233.12 to a sewer account following the discovery of a hidden commode leak.

Upon consideration of the standard of review, the parties' briefs, oral arguments and the record on appeal, the Court finds no substantial question of law or prejudicial error. For these reasons, a memorandum decision affirming the Commission's decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August 2018, Rebecca Florczak received a high water bill totaling $424.55.[3] After receiving the bill, Ms. Florczak's daughter began investigating and immediately realized that a commode in Ms. Florczak's master bathroom was leaking. They fixed the leak by adjusting the chain to the flapper valve.  Although Ms. Florczak slept in the master bedroom adjacent to the master bath during the timeframe that the commode leaked, she had never entered the master bathroom because it had been used exclusively by her recently deceased husband.[4]  And the master bathroom door was not directly adjacent to the master

---

[1] The City of Kenova is represented by counsel, F. Paul Calamita, Esq.

[2] The Commission is represented by staff attorney, John R. Auville, Esq., and general counsel, Jessica M. Lane., Esq.

[3] Ms. Florczak's water usage was typically around 3,000 gallons per month.  The sewer bill at issue reflected water usage of 19,200 gallons that month.

[4] Ms. Florczak testified before the Administrative Law Judge (ALJ) that her husband died after being in the hospital from June 12, 2018 to June 27, 2018.  Prior to his death,

bedroom. So, although Ms. Florczak slept in the master bedroom, she did not hear the water running in the bathroom.

After discovering the leaking commode, Ms. Florczak requested a leak adjustment from the City. City officials informed her that the Commission's rule prohibits granting a leak adjustment. So, Ms. Florczak was required to pay the full amount due in order to maintain her water service. But, she filed a formal complaint with the Commission on August 31, 2018. The City filed an answer seeking to dismiss her complaint, arguing that because the high bills were a result of a leaking commode, Ms. Florczak did not qualify for a leak adjustment under Water Rule 4.4.c.1, which provides that "leaking commodes . . . shall not constitute leaks which entitle the customer to a recalculated bill." Following an investigation by the Commission Staff, it filed its Final Memorandum on November 29, 2018 recommending that Ms. Florczak receive a leak adjustment credit in the amount of $233.12 because the high bills were most likely caused by a leaking commode that was not obvious or detectable to Ms. Florczak, as that area of her residence was closed off due to the husband's cancer treatment and death.

Following an evidentiary hearing on December 21, 2018, the Administrative Law Judge (ALJ) entered a recommended decision on February 6, 2019 dismissing the case.[5] The ALJ found that Water Rule 4.4.c.1 is unambiguous and prohibits the City from granting an adjustment for a commode leak. On February 26, 2019, Ms. Florczak filed exceptions to the recommended decision, asking the Commission to reverse the ALJ's decision and grant her a leak adjustment. Ms. Florczak argued that the City was just as responsible as she was, if not more so, for failing to detect the leak because the City has a radio read meter system with capability to send an alert on a high meter read, but the City did not activate the alert system. And, she argued that there are exceptions to every rule

Mr. Florczak used a treatment called BCG, a medication injected into the bladder to destroy cancer cells. Every time he flushed the commode, he had to add a chemical solution to the commode to dilute the chemicals' toxicity. So, due to the nature of these treatments, the bathroom was off-limits to guests before Mr. Florczak's death. In the month following his death, Ms. Florczak did not go into the bathroom because it had not yet been sterilized to make it safe to use. She routinely used the guest bathroom instead, storing all of her toiletries there.

[5] In addition to the testimony provided by Ms. Florczak and her daughter at this hearing, the ALJ also heard evidence from a City meter utility technician who testified that although the City had a special radio read system that alerts for a high meter read in order to notify customers of a potential leak prior to issuing a bill, it did not activate the alert system. A technical analyst from the Commission's Engineering Division also provided testimony regarding other cases where leak adjustments had been made in instances where a complainant had a hearing problem or other physical difficulty making it difficult for the leak to be visible or audible to the complainant.

and the Commission had approved a leak adjustment for a customer who could not access the upper level of the home. She reiterated that she did not hear the leak.

The Commission Staff filed a response to Ms. Florczak's exceptions disagreeing with the ALJ's recommended decision, noting that the Commission often engages in a review of the circumstances of a leak, even if a commode is the cause.[6] The Staff argued that the Commission should grant the exceptions filed by Ms. Florczak because she had good reason for restricting access to the master bathroom, and the layout of the house made hearing the leak difficult because the master bathroom door was not directly adjacent to the master bedroom. On September 6, 2019, the Commission entered a final order determining that the unique facts of this case supported granting a leak adjustment because the leak was hidden or otherwise undetectable to Ms. Florczak. The City then filed this appeal.

The issue before this Court is whether leak adjustments are expressly prohibited under Water Rule 4.4.c.1. The City contends that in addition to the clear language of the rule stating that "leaking commodes . . . shall not constitute leaks which entitle the customer to a recalculated bill," the Commission had also explained during the adoption of the rule that, "we . . . believe that the rule should *not* apply to leaky commodes, dishwashers or other appliances. We have attempted to place an exclusion to this rule to prevent adjustments in those circumstances. The adjustment is intended to be applied for major leaks such as pipes which break."[7] The City cites two PSC cases involving unoccupied houses, arguing that the Commission did not engage in a discoverability analysis in those cases.[8] The City asserts that in this case, the Commission's leak adjustment amounts to a "revised rule through interpretation."

Conversely, the Commission asserts that it did not change the leak adjustment rule in this case. It argues that Water Rule 4.4.c.1 does not contain an absolute prohibition to leak adjustments, and since adoption of this rule, the Commission has engaged in a case-by-case analysis to determine whether specific facts and circumstances warrant adjustments. The Leak Adjustment Rule provides:

---

[6] The City did not file a response.

[7] *In re Revised Rules and Regulations for Water Util.*, Gen. Ord. No. 188.12, 1995 WL 735601 at \*4 (W. Va. P.S.C. Oct. 11, 1995) (Emphasis added).

[8] *See Currence v. Elkins Mun. Water Dep't*, No. 03-0004-W-C, 2003 W.Va. PUC LEXIS 1533 (W. Va. P.S.C. April 9, 2003)(finding leaks associated with a toilet in a vacant house are not entitled to a leak adjustment); *Sabo v. Morgantown Util. Bd.*, No. 02-0367-WS-C, 2002 WL 35458289 (W. Va. P.S.C. June 14, 2002)(finding leaks from a toilet are not qualified for leak adjustments even though the resident was deceased).

Each utility shall develop and implement a written policy concerning the adjustment of customer bills where the bill reflects unusual usage which can be attributable to leakage on the customer's side of the meter. Leaking commodes, dripping faucets, malfunctioning appliances and similar situations shall not constitute leaks which *entitle* the customer to a recalculated bill. The policy shall be maintained in the utility's office for inspection by the public and shall be applied in a non-discriminatory manner to all customers. *The reasonableness of the utility's policy or practice with respect to a policy shall be subject to Commission review in a formal complaint proceeding.*[9]

The Commission promulgated the Leak Adjustment Rule in its current form in 1995.[10] The Commission notes that it discussed utility opposition to customer leak adjustments in its 1995 order, specifically, "[s]everal parties generally opposed mandatory leak adjustments. They believe that the adjustments send the wrong message to customers regarding maintaining their lines. *We continue to believe leak adjustments are reasonable.*"[11] In the same order, the Commission noted utilities' requests that the Commission limit leak adjustments to underground leaks only, and purposefully exclude leaking commodes and faucets.[12] The Commission contends that it refused to limit leak adjustments to underground leaks, and instead incorporated the rule language relied on by Petitioner to disallow leaks that are obvious to the customer.

The Commission asserts that the Leak Adjustment Rule includes two ways to evaluate leaks for eligibility for an adjustment. First, the use of the word "*entitle*" signals to water utilities and their customers that customers are not automatically entitled to an adjustment for leaks caused by leaking commodes, dripping faucets, or malfunctioning

---

[9] Water Rule 4.4.c.1 (Emphasis added).

[10] *In re Revised Rules and Regulations for Water Util.*, Gen. Ord. No. 188.12, 1995 WL 735601.

[11] G.O. 188.12 at 3 (Emphasis added). The Commission explains that shortly after issuing G.O. 188.12, the Commission finalized corresponding *Sewer Rules* through General Orders 188.12 *In the Matter of Revised Rules and Regulations for Water Utilities* and General Order 186.8 *In the Matter of Revised Rules and Regulations for Sewer Utilities* November 3, 1995.

[12] *Id*. at 4.

4

appliances. Second, the Leak Adjustment Rule provides that the Commission will review in a formal complaint proceeding the reasonableness of a utility's leak adjustment policy and its application to the circumstances of a particular leak. Because an endless number of scenarios can lead to a customer leak, the Commission maintains that it provided guidance as to what a leak adjustment policy should look like, while reserving its authority to review individual fact patterns.

The Commission argues that in subsequent orders applying the language of Water Rule 4.4.c.1, it affirmed that the rule does not prohibit a leak adjustment for a leaking commode, dripping faucet, or malfunctioning appliance. It contends that it has also consistently engaged in an individual review of the circumstances in each case, citing to several where it held that leaks may qualify for an adjustment if the leak was hidden, or not obvious or detectable, to the customer.[13]

The Commission asserts that in *McDowell v. Jefferson Utilities Inc. and Jefferson County Pub. Serv. Dist.*[14]*,* a case involving a leak originating from a faulty spigot at a non-detectable location at the rear of a residence, it described its application of the leak adjustment rule as follows:

> [T]he underlying policy behind the rules is that the customer, not the utilities, should be responsible for costs related to leaks on the customers' side of the meter that are obvious to the customer, and, thus are easily repaired by the customer and preventable through routine maintenance. As the Commission has recognized, "[o]ne purpose of the applicable Water Rules and Sewer Rules is to deny leak adjustments in cases where the accrual of a large bill is due to the customer's

---

[13] *See Collins v. Corp. of Shepherdstown*, Case No. 01-1430-WS-C (Commission Order, July 23, 2002)(leak not noticeable because it originated in broken pipe in wall and water did not run into house); *Solenberger v. Martinsburg Mun. Water and Sewer Dep'ts.*, Case No. 05-0645-WS-C (Recommended Decision, August 15, 2005, Final Commission Order, September 7, 2005)(utility agreed to leak adjustment because leak due to faulty bathtub faucet located in vacant house owned by customer); *Mayfield, Inc. v. Berkeley Cnty. Pub. Serv. Water Dist.*, Case No. 02-1416-PWD-C (Recommended Decision, June 5, 2003, Final Commission Order June 25, 2003)(leak in crawl space undetected for a period of time); and *Watkins v. City of Grafton*, Case No. 97-1545-S-C (Commission Order, February 11, 1998)(leak adjustment made to customer based on hardship waiver under Water and Sewer Rules because the customer had hearing problems and difficulty discerning the sound of running water).

[14] Case No. 09-0769-W-PSD-C (Commission Final Order, January 11, 2011).

own failure to notice an obvious leak (like a leaky toilet)"
*Collins v. Corp. of Shepherdstown*, Case No. 01-1430-WS-C
(Commission Order dated July 23, 2002) at p. 7.[15]

In the same decision, the Commission stated:

> Applying the underlying policy of customer responsibility for readily discernable leaks leads to the obvious corollary that if the customer has a leaking toilet, dripping faucet, malfunctioning appliance or similar situation that is not obvious or detectable to the customer, a leak adjustment is approvable under the rules.[16]

The Commission contends, and we agree, that a review of the cases cited by the City also supports the Commission's argument that Water Rule 4.4.c.1 does not absolutely prohibit a billing adjustment for undetected water consumption relating to commodes and that the circumstances of a leak matter.[17]

When this Court reviews the Commission's administrative orders, we have explained that

> "The detailed standard for our review of an order of the Public Service Commission contained in Syllabus Point 2 of *Monongahela Power Co. v. Public Service Commission*, 166 W.Va. 423, 276 S.E.2d 179 (1981), may be summarized as follows: (1) whether the Commission exceeded its statutory jurisdiction and powers; (2) whether there is adequate evidence

---

[15] *Id*. at 5.

[16] *Id. See also Jenkins v. Berkeley Cty. Pub. Serv. Sewer Dist*., Case No. 17-0663-PSD-C (W. Va. P.S.C. Oct. 1, 2018)(reaffirming principles discussed in *McDowell* and permitting bill adjustment for a hidden leak resulting from a malfunctioning water softener valve).

[17] *See Sabo v. Morgantown Util. Bd.*, No. 02-0367-WS-C, 2002 WL 35458289 at \*2 (W. Va. P.S.C. June 14, 2002) ("While [Commission Staff] generally agreed that a leaking commode under most circumstances did not qualify for a leak adjustment, [Commission Staff] would reserve final judgment until a field investigation was completed."); *see also Currence v. Elkins Mun. Water Dep't*, No. 03-0004-W-C, 2003 W.Va. PUC LEXIS 1533 at \*6 (W. Va. P.S.C. April 9, 2003) (ALJ dismissed the case after a "consideration of all of the above," after no objections were filed to the Staff's recommendation of dismissal.).

to support the Commission's findings; and, (3) whether the substantive result of the Commission's order is proper."[18]

Recognizing a deferential standard of review, this Court has also stated, "'[t]he principle is well established . . . that an order of the public service commission based upon its finding of facts will not be disturbed unless such finding is contrary to the evidence, or is without evidence to support it, or is arbitrary, or results from a misapplication of legal principles.'"[19]

The Commission reviewed the City's application of its leak adjustment policy to the particular facts of this case in a manner consistent with its previous decisions and Water Rule 4.4.c.1, and there was adequate evidence to justify a leak adjustment. The undisputed testimony in the record shows that due to the nature of the cancer treatments of Ms. Florczak's late husband, the bathroom was strictly off-limits to guests before and after his death. Ms. Florczak exclusively used the guest bathroom and did not hear the water because the master bathroom door was not directly adjacent to the master bedroom. Under this Court's highly deferential standard of review, we find no reason to disturb the Commission's order.[20] Because we find that the grant of the leak adjustment was proper, the City's request for attorney's fees and costs is not warranted.[21]

---

[18] Syl. Pt. 2, *Pool v. Greater Harrison Cty. Pub. Serv. Dist.*, 241 W. Va. 233, 821 S.E.2d 14 (2018) (citing Syl. Pt. 1, *Central W.Va. Refuse, Inc. v. Pub. Serv. Comm'n of W.Va.*, 190 W.Va. 416, 438 S.E.2d 596 (1993)).

[19] Syl. Pt. 1, in part, *Sierra Club v. Pub. Serv. Comm'n*, 241 W. Va. 600, 827 S.E.2d 224 (2019) (citations omitted).

[20] *See W. Va. Citizens Action Group v. Pub. Serv. Comm'n*, 233 W. Va. 327, 758 S.E.2d 254 (2014). It is also important to note that a leak adjustment does not adversely impact the City or its other customers financially. In a case where a customer is awarded a leak adjustment, the customer's account is credited the amount of excess revenue billed, net of the actual variable costs attributed to leaked water. In this manner, the utility is reimbursed for the actual variable cost of the water it produced. So, with the payment of a leak-adjusted bill, the City is made whole for the actual expenses incurred in producing the additional water but does not receive revenues over and above those costs.

[21] The City additionally lodged an objection below to the Commission's web docket practice to restrict certain cases from open access on the Commission website. However, the ALJ overruled the objection. The City now raises a second issue asserting that the Commission's restricted web docket violates the Freedom of Information Act (FOIA), and that because taxpayer dollars fund the Commission's operations, the Commission should not be able to profit from these electronic records by selling the records to Westlaw and Lexis while limiting access for taxpayers. The City maintains that without access to the

For these reasons, we affirm the Commission's September 6, 2019, order requiring the City to make a leak adjustment credit in the amount of $233.12 to the sewer account of Ms. Florczak.

Affirmed.

**ISSUED**: May 26, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

---

records, complainants and courts are at a disadvantage because only the Commission can rely on the full history of decisions.  We find this issue of no merit.  As the Commission correctly contends, FOIA does not require a public body to publish public documents on the internet, but rather only requires a public body to provide non-protected information upon request. *See* W. Va. Code § 29B-1-3 (2019).  And, as represented by the Commission, it has recently reviewed its website restriction practices and has decided to post un-redacted versions, if possible, of Orders issued in customer billing complaints on or after October 23, 2019.